ELIZABETH C. DOLGNER *v.* JON M. ALANDER, COMMISSIONER OF HUMAN RESOURCES (15237)

Peters, C. J., and Borden, Berdon, Norcott and Palmer, Js.

Argued March 19—officially released June 4, 1996

*Joseph P. Secola*, with whom, on the brief, was *Vincent P. McCarthy*, for the appellant (plaintiff).

*Nyle K. Davey*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch* and *Hugh Barber*, assistant attorneys general, for the appellee (defendant).

PETERS, C. J. The dispositive issue in this appeal is whether the trial court properly concluded that substantial evidence supported the determination by an administrative hearing officer that the plaintiff had violated agency regulations in connection with the operation of her family day care home. After a contested hearing, the defendant, the commissioner of human resources (commissioner), revoked a registration to operate a family day care home owned by the plaintiff, Elizabeth C. Dolgner, for violations of department regulations. The plaintiff appealed from the commissioner's decision to the Superior Court, which dismissed the appeal. The plaintiff then appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The revocation of the plaintiff's day care registration arose out of the following undisputed events. Pursuant to a registration issued by the department of human resources (department),[1] the plaintiff operated a day care business at her home in Manchester.[2] In Septem-

[1] Effective July 1, 1993, the department of human resources was succeeded by the department of social services. General Statutes § 17b-1 (b). Effective July 1, 1994, responsibility for registering family day care homes was transferred to the department of health and addiction services. See General Statutes § 19a-87b.

[2] General Statutes (Rev. to 1993) § 19a-77 provides in relevant part: " 'Child day care services' defined. Additional license. (a) As used in sections 19a-77 to 19a-80, inclusive, and 19a-81 to 19a-87, inclusive, 'child day care services' shall include . . .

"(3) A 'family day care home' which consists of a private family home caring for not more than six children, including the provider's own children not in school full time, where the children are cared for not less than three nor more than twelve hours during a twenty-four-hour period and where care is given on a regularly recurring basis. During the regular school year, a maximum of three additional children who are in school full time, including the provider's own children, shall be permitted, except that if the provider has more than three children who are in school full time, all of the provider's children shall be permitted. . . ."

ber, 1991, a parent of children under the plaintiff's care filed with the Manchester police department a complaint alleging that the plaintiff had physically abused one of the children. Robert Harss, a detective in the youth division of the Manchester police department, and Georgette Katin, a social worker employed by the department of children and youth services (DCYS),[3] investigated the allegations of misconduct. Both Katin and Harss have professional experience and expertise in investigating child abuse, including abuse in day care settings. DCYS notified the commissioner of the existence and nature of its ongoing investigation.

As part of the investigations conducted by the Manchester police department and by DCYS, Katin and Harss jointly interviewed several children who attended the plaintiff's family day care home. Some of the children interviewed by Katin and Harss reported abusive and other inappropriate treatment by the plaintiff. On September 27, 1991, DCYS notified the commissioner that its investigation had confirmed instances of emotional abuse, physical discipline and inappropriate supervision of children at the plaintiff's family day care home. DCYS subsequently transmitted to the commissioner a report of its investigation and findings.

On October 3, 1991, on the basis of the DCYS report, the commissioner notified the plaintiff by certified letter that he proposed to revoke her day care registration under the authority of § 17-31q-15 (i) (2)[4] of the Regula-

---

[3] Effective July 1, 1993, DCYS was succeeded by the department of children and families. See General Statutes § 17a-1 (c).

[4] At the time of the revocation of the plaintiff's day care registration, § 17-31q-15 of the Regulations of Connecticut State Agencies provided in relevant part: "Qualifications of the applicant, provider and substitute . . . .

"(i) Protective services check . . . .

"(2) A finding that there is a DCYS record or an on-going DCYS investigation . . . may provide a sufficient basis for the Commissioner to take immediate action against the party so found. The Commissioner may deny a day care application; summarily suspend and/or propose to revoke a registration

tions of Connecticut State Agencies and because of alleged violations of § 17-31q-19 (h) (2) and (3)[5] of those regulations. The plaintiff requested a more definite statement of the factual basis of the proposed revocation. The commissioner responded to the plaintiff's request by sending her another certified letter in which he summarized the DCYS report of its investigation. Subsequently, the plaintiff requested a hearing in order to challenge the proposed revocation.

On June 30, August 4 and September 11, 1992, the commissioner conducted hearings on the proposed revocation of the plaintiff's day care registration. The

. . . depending on the particular circumstances of a given case. . . ." The department promulgated the regulation under its statutory authority pursuant to General Statutes § 17-585 et seq., now designated as General Statutes § 19a-87b et seq.

Section 17-31q-15 (i) (2) was repealed effective September 1, 1993. A substantially similar provision is now located at § 19a-87b-6 (g) (1) (B) (2) of the Regulations of Connecticut State Agencies.

[5] At the time of the revocation of the plaintiff's day care registration, § 17-31q-19 of the Regulations of Connecticut State Agencies provided in relevant part: "Responsibilities of the provider and substitute . . . .

"(h) Providing humane care, immediate attention, and proper supervision, control and discipline

"The provider shall be responsible for humane care, proper attention, supervision, control and discipline of the day care children which is appropriate to each child's age and level of development, including the following . . .

"(2) Child abuse and neglect

"The provider shall not engage in, nor allow, abusive, neglectful, corporal, humiliating or frightening treatment or punishment, and shall not employ or use restraints not appropriate to the circumstances. These prohibitions shall apply, but not be limited to, the activities of toileting, feeding and sleeping. The provider shall not engage nor allow anyone else to engage in sexual activity with the day care children.

"(3) Supervision

"The provider shall be responsible for supervision of the children at all times while the children are in the facility, indoors or outdoors. Removal of a child from the group for disciplinary or health reasons shall be to a location where supervision under visual observation shall be maintained." The department promulgated the regulation under its statutory authority pursuant to General Statutes § 17-585 et seq., now designated as General Statutes § 19a-87b et seq.

plaintiff was present and was represented by counsel at all three hearings. Both Katin and Harss testified for the commissioner. Katin testified that she had interviewed children who had attended the plaintiff's family day care home and that she had concluded, from those interviews, that some of the children had been emotionally abused. Harss testified that some of the children whom he and Katin interviewed had reported that someone had slapped a child and that "[a]ccess to the [plaintiff's] house was not allowed by some of the children." Harss further testified that some of the children had reported instances of abusive treatment at the plaintiff's family day care home, although he did not disclose any specific instances of abusive treatment.[6] Over the plaintiff's hearsay objections, the hearing officer admitted into evidence the entire testimony of Katin and Harss. Neither Katin nor Harss testified as to any specific instances of mistreatment or recounted what specifically identified children had told them during their interviews. None of the children whom Katin and Harss had interviewed testified at the hearings.[7]

Section 17-31q-19 was repealed effective September 1, 1993. Current regulations pertaining to the responsibilities of day care providers are located at § 19a-87b-10 of the Regulations of Connecticut State Agencies.

[6] The following is the substance of Harss' testimony regarding inappropriate conduct by the plaintiff at her family day care home: "What comes to mind as far as physical abuse was—it was restraining this small child on the floor . . . slapping another child on the buttocks and slapping a child across the face . . . . [A]pparently, there was a lot of arguing between [the plaintiff] and her daughter in the presence of these children, and . . . according to the children, [the plaintiff] would yell a lot at them . . . . [A]nd there were children that were playing in the backyard, and I think one of the children said that they were unsupervised when they were in the backyard."

[7] The commissioner also presented as witnesses four department employees and two DCYS employees. None of these witnesses testified as to any specific acts of misconduct occurring at the plaintiff's family day care home.

The plaintiff presented as witnesses herself, her daughter, her husband, a child who had attended her family day care home and four parents of children who had attended her family day care home. Each of these witnesses either denied that abusive or otherwise inappropriate treatment of children had occurred at the plaintiff's family day care home, or denied any knowledge of misconduct occurring at the plaintiff's day care home.

In addition to testimonial evidence, at the commissioner's request the hearing officer admitted into evidence the department's case summary. The case summary briefly described the complaint that had prompted the police and DCYS investigations of the plaintiff's family day care home[8] and outlined the administrative actions taken by the commissioner in response to his notification of the investigations.

Neither the commissioner nor the plaintiff offered as full exhibits at the hearings the reports prepared by DCYS and the Manchester police department. These documents identified the children whom Katin and Harss had interviewed during their investigations, and contained the substance of statements that children had made during the interviews. The two reports were marked for identification only, and the plaintiff inspected them before she cross-examined Harss and Katin and presented her case.

The hearing officer found that the commissioner had proven with reliable, probative and substantial evidence that there existed a DCYS report confirming emotional abuse, the use of physical discipline and inappropriate supervision of day care children by the plaintiff. The hearing officer further found that the commissioner had proven with reliable, probative and substantial evidence that the plaintiff had "failed to be responsible for humane care, proper attention, supervision, control and discipline when she engaged in abusive, neglectful, corporal, humiliating and frightening treatment and punishment of day care children and when she failed to be responsible for the supervision of children at all times . . . ."

---

[8] This portion of the case summary provided in relevant part: "The referral alleged that a parent of day care children in [the plaintiff's] care had been told by her four and one-half year old son that . . . the child had witnessed his two and one-half year old sister being slapped across the face by [the plaintiff]."

On the basis of her finding of the existence of a DCYS report confirming mistreatment of day care children, the hearing officer concluded that the commissioner was authorized to take immediate action against the plaintiff under § 17-31q-15 (i) (2). Additionally, on the basis of her finding that the plaintiff had engaged in inappropriate conduct, the hearing officer concluded that the plaintiff had failed to comply substantially with § 17-31q-19 (h) (2) and (3).[9] In view of these conclusions, the hearing officer, acting on behalf of the commissioner, rendered the commissioner's final decision revoking the plaintiff's day care registration. General Statutes (Rev. to 1993) § 17-588 (a).[10]

Pursuant to General Statutes § 4-183,[11] the plaintiff appealed the revocation of her day care registration to the Superior Court. The plaintiff claimed that the commissioner had violated her statutory and constitutional rights because: (1) the hearing officer had improperly based her findings on hearsay evidence; (2)

[9] The hearing officer also concluded that the plaintiff had failed to comply substantially with § 17-31q-15 (i) (2), and the trial court agreed with that conclusion. Section 17-31q-15 (i) (2), however, is not a regulation that a registrant, such as the plaintiff, may comply with or may violate. Rather, § 17-31q-15 (i) (2) merely sets forth the basis upon which the commissioner may take action against a registrant. See footnote 4.

[10] General Statutes (Rev. to 1993) § 17-588 provides in relevant part: "Discretion in the issuance of registrations. Suspension. Revocation. Notification of criminal conviction. False statements. Reporting of violations. (a) The commissioner of human resources shall have the discretion to refuse to register under section 17-585, a person to own, conduct, operate or maintain a family day care home, as defined in section 19a-77, or to suspend or revoke the registration, if the person who owns, conducts, maintains or operates the home or a person employed therein in a position connected with the provision of care to a child receiving child day care services . . . fails to substantially comply with the regulations adopted pursuant to section 17-585 . . . ."

[11] General Statutes § 4-183 provides in relevant part: "Appeal to Superior Court. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. . . ."

there had been insufficient evidence to support the hearing officer's findings; and (3) the commissioner had failed to provide the plaintiff with adequate notice of the factual and the legal basis of the charges against her.

The trial court dismissed the plaintiff's appeal. The trial court concluded that the hearing officer had properly admitted the testimony of Katin and Harss as to what the children had told them concerning abuse and other inappropriate treatment at the plaintiff's family day care home. In this connection, the trial court concluded that the hearing officer had properly determined that the testimony was both probative on the issue of the plaintiff's suitability for registration as a day care operator and sufficiently reliable to be admissible at the administrative hearings. The trial court further concluded that the hearing officer had properly revoked the plaintiff's registration because the evidence adduced at the hearings was sufficient to support the hearing officer's findings that there existed a DCYS report of abuse and that the plaintiff had mistreated children who attended her family day care home. Last, the trial court concluded that the commissioner had sufficiently notified the plaintiff of the factual and the legal basis underlying the proposed revocation of her registration.

On appeal to this court, the plaintiff reasserts her claim that the trial court improperly determined that substantial evidence supported the commissioner's revocation of her day care registration. Specifically, the plaintiff contends that the use of hearsay evidence to support the commissioner's decision to revoke her day care registration violated her rights to due process and to confrontation under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and her right to due process under the federal and the state constitutions. The plaintiff further contends that the commissioner failed to establish a prima facie case

against her by substantial evidence. Under the circumstances of this case, we are persuaded that the evidence adduced at the hearings did not constitute substantial evidence to support the commissioner's decision to revoke the plaintiff's day care registration.[12]

We review the issues raised by the plaintiff in accordance with the limited scope of judicial review afforded by the UAPA. *Perkins* v. *Freedom of Information Commission,* 228 Conn. 158, 164, 635 A.2d 783 (1993); *Buckley* v. *Muzio,* 200 Conn. 1, 3, 509 A.2d 489 (1986). "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.) *Dufraine* v. *Commission on Human Rights & Opportunities,* 236 Conn. 250, 259, 673 A.2d 101 (1996); *Schallenkamp* v. *DelPonte,* 229 Conn. 31, 40, 639 A.2d 1018 (1994). Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); *Connecticut Natural Gas Corp.* v. *Public Utilities Control Authority,* 183 Conn. 128, 134, 439 A.2d 282 (1981). Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. *Perkins* v. *Freedom of Information Com-*

---

[12] Because we conclude that the trial court improperly concluded that substantial evidence supported the hearing officer's determination that the plaintiff had violated department regulations, we do not reach the plaintiff's claim that the trial court improperly concluded that the hearing officer had properly admitted the testimony of Katin and Harss regarding the conclusions that they had reached on the basis of hearsay statements made by the children whom they had interviewed.

*mission,* supra, 164; *New Haven* v. *Freedom of Information Commission,* 205 Conn. 767, 773, 535 A.2d 1297 (1988).

The "substantial evidence" rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j) (5) and (6).[13] "An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 593, 590 A.2d 447 (1991); *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* 219 Conn. 51, 57, 591 A.2d 1231 (1991). The substantial evidence rule "imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Citations omitted; internal quotation marks omitted.) *Dufraine* v. *Commission on Human*

[13] General Statutes § 4-183 (j) provides in relevant part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment."

*Rights & Opportunities*, supra, 236 Conn. 260; see *Connecticut Building Wrecking Co.* v. *Carothers*, supra, 593.

Assuming, without deciding, that the evidence presented at the administrative hearings was admissible, even in light of the highly deferential standard of review accorded to administrative agency fact-finding, we are persuaded that the record in this case lacks substantial evidence to support the hearing officer's determination that the plaintiff had violated department regulations. As to the hearing officer's determination that the plaintiff had abused and inadequately supervised day care children in violation of § 17-31q-19 (h) (2) and (3), the only evidence to support her finding that the plaintiff had engaged in inappropriate conduct consisted of conclusory and general statements. The evidence presented at the hearings failed to disclose the factual particulars regarding inappropriate conduct that had occurred at the plaintiff's family day care home, the dates on which inappropriate conduct occurred, the frequency of inappropriate conduct or any other details concerning the plaintiff's alleged violations of § 17-31q-19 (h) (2) and (3). Moreover, although the department's case summary disclosed the age of one of the children who had reported abusive treatment, no other evidence disclosed the ages of the children who had reported inappropriate conduct.

Although the reports prepared by DCYS and the Manchester police department contained the specific factual foundation of the plaintiff's alleged misconduct, neither report was introduced into evidence at the administrative hearings. In the absence of such basic factual predicates, the hearing officer was not provided with an opportunity to assess and to weigh independently and adequately the accuracy and the reliability of the evidence presented. Moreover, although Katin and Harss testified that each had concluded, on the

basis of the interviews they had conducted with the children, that inappropriate conduct had occurred at the plaintiff's family day care home, the hearing officer had no opportunity to gauge the accuracy or the weight of these conclusions because the evidence failed to disclose any specific factual predicates upon which the witnesses' conclusions had been based. Accordingly, we conclude that the record does not contain substantial evidence from which the hearing officer reasonably could have determined that the plaintiff had violated § 17-31q-19 (h) (2) and (3).

Although the commissioner also revoked the plaintiff's day care registration under the authority of § 17-31q-15 (i) (2), we further conclude that, as a matter of law, the revocation could not have been premised on that regulation. At the time of the revocation of the plaintiff's day care registration, § 17-31q-15 (i) (2) provided in relevant part: "A finding that there is a DCYS record . . . may provide a sufficient basis for the Commissioner to take immediate action against the party so found. The Commissioner may deny a day care application; summarily suspend and/or *propose to revoke* a registration . . . ." (Emphasis added.) Under the express language of § 17-31q-15 (i) (2), although the existence of a DCYS report is sufficient to initiate revocation proceedings, the existence of such a report is not sufficient, by itself, to revoke a registration.

Our search of the entire record persuades us that the evidence adduced at the administrative hearings, lacking any specificity as to the misconduct with which the plaintiff had been charged, is insufficient to support the hearing officer's determination that the plaintiff had violated § 17-31q-19 (h) (2) and (3). Accordingly, the trial court improperly concluded that substantial evidence supported the commissioner's revocation of the plaintiff's day care registration.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment sustaining the appeal.

In this opinion the other justices concurred.