[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Joseph Luca appeals the decision of the defendant examining board for barbers, hairdressers cosmeticians revoking his master barber's license and imposing a civil penalty of $2000.00. The board acted pursuant to General Statutes §§ 20-238
and 19a-17. The plaintiff appeals pursuant to § 4-183. The court finds in favor of the plaintiff.
The facts essential to the court's decision are not in dispute and are fully set out in the record. The defendant department of health and addiction services issued a master barber license to the plaintiff in 1979. In 1988, the plaintiff was convicted of illegally selling drugs and served a prison term. He was addicted to narcotics, specifically cocaine, at the time.
As a result of his criminal conviction, the board revoked the plaintiff's master barber license in September 1991. The board found at that time that "Joseph Luca's conduct, as stipulated to by him, is a violation of Connecticut General Statutes § 20-238
in that he was habitually intoxicated or habitually addicted to the use of cocaine." The stipulation referred to in the board's decision occurred during the hearing in April 1991. The plaintiff's attorney stipulated that the plaintiff was addicted to cocaine at the time he was selling drugs, during 1987. There was no stipulation that the plaintiff was addicted in 1991. CT Page 9567
In February 1993, the plaintiff applied to the department for reinstatement of his master barber's license. He was then undergoing treatment and therapy at the Veterans Administration hospital. After a hearing, the board found that the plaintiff "is able to practice as a master barber with reasonable skill and safety." Accordingly, the board reinstated the license "to a probationary status" and imposed conditions of the probation, as follows:
"A. The petitioner shall abstain from alcohol and drugs.
B. The petitioner shall sign a waiver entitling the Board to automatically receive copies of his VA drug testing reports on a regular basis.
C. The petitioner shall be responsible for submitting to random urine and/or blood screens for alcohol and drugs for the entire probationary period, at the discretion of the VA and/or his personal physician . . . There shall be at least one such alcohol and drug screen monthly for the entire period of probation . . . Reports of monthly random alcohol and drug screens are due by the first business day of each subsequent month . . . .
D. The random alcohol/drug screens cited in paragraph C above shall be ordered and collected at the VA.
E. The plaintiff shall not use any non-prescribed drug.)
F. The petitioner's licensed therapist at the VA shall submit monthly reports to the Board documenting his drug free status, emotional health, and ability to administer safe master barber care.
G. (relating to change in employment)
H. (relating to change in address)
I. (requiring the plaintiff to provide a copy of the board's decision to his employers)
J. (relating to change in employer)
K. and L. (require plaintiff to) "see that the Board receives quarterly employer reports (attesting to) the plaintiff's CT Page 9568 "ability to safely and competently practice as a master barber."
In its decision, the board ordered that "Any deviation from the terms of probation without prior written approval from the Board will constitute a violation of probation and will subject the petitioner to sanctions under General Statutes § 19a-17
(*a) and (c), including but not limited to the revocation of his license."
Almost immediately, the plaintiff and the board encountered difficulties relating to the terms of the probation. On May 19, 1994, the department notified the plaintiff of charges that it filed with the board and its request that the board revoke the plaintiff's master barber license. The charges were in two counts. The first count alleged that the plaintiff failed to comply with various conditions of the probation. The second count alleged that the plaintiff "is habitually addicted to narcotics and/or other habit-forming drugs, and has used to excess and/or has abused the same as recently as 1990."
On September 12, 1994, the board conducted a hearing on the charges brought by the department. At the hearing, the department amended the second count of the charges by changing the year it alleged the plaintiff used illegal drugs from 1990 to 1987. No testimony was presented at the hearing, but both the department and the plaintiff presented documentary evidence and argument in support of their respective positions.
On September 11, 1995, the board rendered its final decision in favor of the department on both counts. The board first stated numerous subordinate findings of fact and then summarized its findings by reference to the statement of charges. With respect to the first count, relating to the failure to comply with the conditions of probation, the board summarized its findings as follows:
 The Board finds that the (plaintiff) failed to submit to monthly urine and/or blood screens for alcohol and drugs, failed to take all reasonable steps to arrange for such screens, and failed to ensure that monthly reports of such screens were submitted to the Board and/or the Department, and failed to take all reasonable steps to ensure that monthly therapy reports were submitted to the Board CT Page 9569 and/or the Department. . . . (The plaintiff) failed to take all reasonable steps to ensure that quarterly supervisor reports were submitted to the Board and/or the Department.
With respect to the second count, alleging that the plaintiff is addicted to narcotics, the decision states, "Based upon the foregoing, the Board found that the Department offered substantial evidence to prove Paragraphs 6, 7 and 8 of the Second Count." A fair translation of this statement is that the board found that, at the time of the hearing, the plaintiff was "habitually addicted" to narcotics and that the board based that determination on its findings related to the asserted noncompliance with the conditions of probation, especially, it may be presumed, those findings concerning the drug screening and reporting.
In his brief to the court, the plaintiff advances a number of arguments in support of his appeal. His principal argument and the one that is dispositive of the appeal is that there is insufficient evidence in the record to support the board's factual findings.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."
"The `substantial evidence' rule governs judicial review of administrative factfinding under General Statutes § 4-183. . . An administrative finding is supported by `substantial evidence' if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred . . . Such a standard of review allows less room for judicial scrutiny than does the `weight of the evidence' rule or the `clearly erroneous' rule . . . In determining whether an administrative finding is supported by `substantial evidence,' a court must defer to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part." (Citations and CT Page 9570 internal quotation marks omitted.) Briggs v. StateEmployees Retirement Commission, 210 Conn. 214, 217 (1989). "If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be upheld." Conn. BuildingWrecking Co. v. Carrothers, 218 Conn. 580, 601 (1991).
The familiar principles of administrative law summarized above present a formidable obstacle to the overturning by the court of an administrative agency's factual findings. Nevertheless, if the record does not contain sufficient substantial evidence to support those findings, the court must reject them. Dolgner v. Alander, 237 Conn. 272 (1996). In the present case, an analysis of the record shows that there is little, if any, evidence to support the board's factual findings. Instead, the evidence tends to prove the opposite.
Drug Testing
On the first count of the department's complaint, relating to the violation of probation, perhaps the most significant and damning finding of the board was that the plaintiff "failed to submit to monthly urine and/or blood screens for alcohol and drugs" as required by the terms of his probation.
There is no evidence of such failure. Instead, the evidence that is in the record indicates that he did submit to such testing on a monthly basis. In addition to the actual test results for one month, the record contains letters from doctors at the VA hospital stating unequivocally that the plaintiff faithfully submitted to the required testing. In particular, a letter from Wendy Harris M.D. to the attorney for the defendant department, dated September 9, 1994, just three days prior to the hearing before the board, states:
 I am writing to you to confirm that Mr. Joseph Luca has been regularly attending PTSD treatment group at the West Haven VA. He has been an active member of the group, and has not presented himself intoxicated. In addition he has had monthly urine tox screens all of which have been negative.
 He has been very compliant with the urine tox screens, and we do not feel that the CT Page 9571 continuation of these on a monthly basis is necessary. Random screens at a 1 or 2 times a year basis would be more cost effective and time efficient, especially as we do not view him as having a substance abuse problem.
The board apparently inferred that the plaintiff was not submitting to the required testing based on the fact that the VA furnished it only sporadic reports. While such a negative inference might have been reasonable in the absence of evidence to the contrary, it is plainly unreasonable and arbitrary in view of the substantial evidence, diametrically to the contrary, that is in the record. Indeed, the court finds it incomprehensible that the board would ignore the most recent, unequivocal evidence from the precise source, the Veterans Administration, that it had previously specified in its probation order.
In view of the lack of substantial evidence in the record, the board's determination that the plaintiff violated his probation by not submitting to drug testing may not be affirmed.
Reports of Drug Testing
The board found that the plaintiff "failed to ensure that monthly reports of (drug tests) were submitted to the Board and/or the Department." The board determined that this failure constituted a violation of the plaintiff's probation.
The court has carefully examined the conditions of the plaintiff's probation, as set forth in the board's earlier decision dated September 20, 1993, and included in the record of this case. That decision does not expressly state that the plaintiff must "ensure" that the VA send reports of its testing to the board on a monthly basis. At most, the decision implies that the plaintiff will make reasonable efforts to obtain the VA's cooperation.
Following the board's decision imposing the probation, the department wrote the plaintiff on October 26, 1993, requesting that he sign a release form directed to the VA hospital to enable the department to receive the VA's drug test reports. The plaintiff immediately complied. Thereafter, difficulties arose between the plaintiff, the VA and the department in obtaining the VA's reports for submission to the department. The record contains several letters and memoranda indicating recalcitrance CT Page 9572 on the part of the VA, frustration and anxiety on the part of the plaintiff, and obduracy on the part of the department. The record does not contain, however, any evidence that the plaintiff unreasonably failed to provide the reports. Nor does the record contain evidence that the plaintiff failed to attempt to secure the cooperation of the VA. If anyone was unreasonable, the record indicates that it was the VA in its lack of cooperation and the department in failing to acknowledge that the plaintiff could not force the VA to do what it plainly was neglecting or refusing to do.
One piece of evidence in the record, related to this subject, is particularly telling. When he experienced difficulties with the VA in his efforts to comply with the reporting requirements of the defendant board's probation orders, the plaintiff attempted to arrange for his parole officer at the department of correction to send reports of that department's drug tests to the defendant department of health and addiction services. The parole officer blundered, however, and sent the report of some other parolee. There is no evidence that the department ever pursued this error at the department of correction; rather, in its brief to the court, the department offers the incident as evidence of the plaintiff's failure to comply with the probation order. "A third report was submitted by the plaintiff, but it was not a report pertaining to the plaintiff." This is simply a mischaracterization of that evidence, starting with the fact that the plaintiff did not submit the useless report to the department; the parole officer did. If this incident is evidence of anything, it is that the plaintiff was indeed making reasonable efforts to comply with his probation conditions but repeatedly experienced negligence and indifference on the part of the state and federal agencies with which he had to deal.
In view of the lack of substantial evidence in the record, the board's determination that the plaintiff violated his probation by failing to provide reports of his drug testing may not be affirmed.
Monthly Therapy Reports
Most of the court's conclusions regarding the submission of drug test reports from the VA apply equally to the difficulties in obtaining reports from the plaintiff's therapist at the VA. Some reports, in the form of letters from his doctors to the department, were made as required. All were favorable. There is CT Page 9573 no evidence that the plaintiff ever failed to make reasonable efforts to obtain the cooperation of the VA; rather, the available evidence suggests otherwise. The board's determination on this issue may not be affirmed.
Quarterly Employer Reports
The board found that the plaintiff violated his probation by failing to "take all reasonable steps to ensure that quarterly supervisor reports were submitted to the Board and/or the Department."
The plaintiff worked for a barber in Meriden. The only evidence in the record indicates that this barber/employer has difficulty with the English language to the extent that he employs the services of a translator to write letters for him. Even with this handicap, the employer wrote three letters to the department, all entirely favorable to the plaintiff, dated October 31, 1993, March 10, 1994, and May 16, 1994. In view of this evidence in the record, the board's determination that the plaintiff failed to take reasonable steps to provide reports from his employer may not be affirmed.
Drug Addiction
The most puzzling and least sustainable of the board's findings and conclusions is that, at the time of the hearing in September 1994, the plaintiff was "habitually addicted to cocaine" so as to require revocation of his license pursuant to General Statutes § 20-238.
Section 20-238 provides, in relevant part, "The board may suspend or revoke any license or certificate granted by it or take any of the actions set forth in section 19a-17 if the holder of the license is . . . habitually intoxicated or habitually addicted to the use of morphine, cocaine, or other habit-forming drugs."
The board, in its decision and in its brief to this court, makes essentially two arguments in support of its decision in this regard. First, the board claims that the plaintiff had been addicted in the past and "failed to offer credible evidence that he was no longer so addicted." This argument has scant basis in the evidence. CT Page 9574
All of the relevant evidence in the record concerning the plaintiff's current condition is to the effect that, from the date of the 1993 decision reinstating his license to the date of the 1994 hearing in this case, the plaintiff's drug screens were negative and he no longer had any substance abuse problem. There was no evidence to the contrary. Dr. Harris's letter of September 9, 1994, virtually contemporaneous with the hearing, states explicitly that all of the plaintiff's monthly drug screens during the period were clean and that the VA, which the board had entrusted with the addiction therapy and evaluation, does "not view him as having a substance abuse problem." The board's decision that the plaintiff was "habitually addicted" to cocaine in 1994 is plainly contradicted by substantial evidence in the record.
The board's second argument, as presented in its brief, is closely related to the first and may be stated as "once an addict, always an addict." While this may be true in some sense, it is clearly not a theory that has informed the board's interpretation of § 20-238 as applied to the plaintiff in the past. For that reason, the decision may be questioned as an abuse of discretion. Furthermore, the plain language of the statute does not support the board's application of it, and the facts in evidence do not reveal a violation of the statute as correctly interpreted.
In 1993, the board reinstated the plaintiff's license with full knowledge of his prior substance abuse, finding that his recent drug screens had been negative and that he had "undergone a degree of change . . . rarely encountered under these circumstances." There is nothing in the record of this case to indicate that either the plaintiff's conduct or condition has changed from what it was in 1993. To the contrary, as noted above, all of the relevant evidence indicates that the plaintiff has continued to pursue a life free from the use of illegal drugs, leaving his unfortunate past habits even farther behind him than they were in 1993.
As has already been noted, the scope of the court's review of an agency's decision is very narrow. Nevertheless, "although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." United ParcelService Inc. v. Administrator, Unemployment Compensation
CT Page 9575Act, 209 Conn. 381, 385 (1988). With respect to the second count of the complaint, alleging current drug addiction, if the board revoked the plaintiff's license in 1995 because of his supposed addiction at the time of the hearing in 1994, disregarding all evidence of recovery, it acted totally inconsistently with its prior action in 1993. That amounts to an abuse of discretion that the court may not affirm.
The board's decision is also flawed because it is based on a reading of the statute that is plainly overbroad. As noted, the board found that the plaintiff was "habitually addicted to cocaine" in 1994, basing that finding on his undisputed past history of substance abuse. But the statute permits revocation of a license upon a determination that the licensee is "habitually intoxicated or addicted to the use of . . . cocaine." (Emphasis added.) The plain, and sensible, meaning of that provision is that there must be evidence of current substance abuse, or the demonstrable potential danger of it, which would impact on the licensee's ability to perform the professional services covered by the license. Evidence of past psychological or physical addiction alone is not sufficient. Otherwise, the board could arbitrarily revoke the license and destroy the livelihood of an individual on the sole ground that he or she is a recovered alcoholic or drug addict. In the present case, of course, there is not a scintilla of evidence the plaintiff currently abuses alcohol, cocaine or anything else. All the evidence is to the contrary. The board's decision may not be affirmed, therefore.
For all of the reasons set forth above, the plaintiff's appeal is sustained. Pursuant to § 4-183 (k), the case is remanded to the board and the board is ordered to reinstate the plaintiff's master barber's license. The board may continue the conditions of probation previously in effect until such probation terminates in accordance with the board's 1993 decision, or the board may make such reasonable modifications in those conditions as are warranted in view of the plaintiff's present condition.
MALONEY, J.