[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed July 24, 1997
In this administrative appeal the Plaintiff challenges the decision of the State of Connecticut Department of Insurance (DOI) finding that certain persons engaged as truck drivers in the course of its business are employees for the purposes of workers' compensation law coverage. The issue was raised before the DOI, by Plaintiff's complaint under General Statutes §38a-678 against Liberty Mutual Insurance Company ("Liberty"); attacking Liberty's determination that approximately twenty-five truck owner-operators employed by Sweeney at Bradley Field in Windsor Locks, Connecticut, were Plaintiff's employees in calculating Plaintiff's workers' compensation insurance coverage. Plaintiff's principal claim is that the truck driver owner-operators are not it's employees and should be excluded from insurance premium calculations.
Plaintiff agrees that the owner-operators employment status is the dispositive issue.[1] Plaintiff also concedes, as he must, that this case is governed by the substantial evidence rule.
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Citations and internal quotation marks.)Dolgner v. Alander, 237 Conn. 272, 280 (1996).
"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action." (Citations and internal quotation marks omitted; footnote omitted.) Dolgnerv. Alander, 237 Conn. 281. Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported CT Page 7784 by substantial evidence." (Citations and internal quotation marks omitted.) Id.
The parties all cite and rely on the leading Connecticut case on distinguishing independent contractors from employees.Kalizewski v. Weathermaster Alneo. Corp. , 148 Conn. at 624
(1961). Kalizewski establishes a test as to the degree of control over the person by the employer, 146 Conn. at 629.
In this case the court must determine if the record contains substantial evidence to support the DOI findings as to Plaintiff's control over the owner-operator truck drivers working at Bradley Field.
The hearing officer made the following findings of fact which accurately cite the evidentiary basis for each finding.
 1. Sweeney is a Massachusetts corporation with a principal place of business in Chicopee, Massachusetts and a Connecticut operation operating out of a leased freight handling facility near Bradley International Airport. There are over two hundred employees based in Massachusetts. (5/29/96 Tr. at 5) (5/29/96 Tr. at 84.)
 2. Sweeney is an Interstate for Hire Common Motor Carrier operating under Certificate of "Public Convience (sic) and Necessity ICC MC 120023", issued by the Interstate Commerce Commission. (Joint Exhibit 1, Owner/Operator Lease Agreement.)
 3. Historically, Sweeney has characterized all twenty-five drivers at the Connecticut operation as independent contractors, with each driver signing an "Owner/Operator" agreement (Joint Exhibit 1.) (5/29/96 Tr. at 6.)
 4. Sweeney was insured by Liberty for Workers' Compensation and Employers Liability insurance through the Connecticut Workers' Compensation Insurance Plan, Connecticut's residual market for workers' compensation insurance. Liberty issued policies on a calendar year basis for the CT Page 7785 period 1993 through January 1, 1997. (5/29/96 Tr. at 16.) The applications submitted by Sweeney reflect payroll only for clerical workers, with the 1992 application estimating $250,000 in clerical payroll for the Windsor Locks operation. (Claimant's Exhibit B.)
 5. The workers' compensation policy Liberty issued to Sweeney is the standard form workers' compensation insurance policy approved for use in Connecticut by the Insurance Commissioner. (5/29/96 Tr. at 80.) (Defendant's Exhibit B.)
 6. Sweeney operates an air cargo transportation business that is subject to ICC regulations. In many respects, ICC regulations govern the relationship between drivers and the company. (5/29/96 Tr. at 24.) The drivers perform services for Sweeney in accordance with their contract with Sweeney (5/29/96 Tr. at 10.) and as required by ICC and the State Department of transportation. (5/29/96 at 6.) Drivers are not allowed to carry other freight while they are logged with Sweeney's motor carrier number (5/29/96 Tr. at 41.)
 7. On or about October 3, 1994, Liberty received a claim for workers' compensation benefits from Frederick Merkette, a driver utilized by Sweeney from its Connecticut based operations. (5/29/96 Tr. at 17.) Liberty negotiated a stipulated agreement with respect to the payment of workers' compensation benefit claim in an amount in excess of one hundred seventy five thousand dollars. (5/29/96 Tr. at 22.) Sweeney did not participate in the negotiations. (5/29/96 Tr. at 19.)
 8. PART FIVE — PREMIUM of form WC 00 00 00 A, the workers' compensation policy insuring Sweeney, describes contractual provision with respect to premium determination. Paragraph C. Remuneration provides that:
 "This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of: CT Page 7786
 1. all your officers and employees engaged in work covered by this policy; and
 2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers' compensation obligations." (Defendants Exhibit B and Liberty 6/25/96 supplement.)
 9. PART FIVE — PREMIUM of form WC 00 00 00 A, the workers' compensation policy insuring Sweeney, describes contractual provision with respect to premium determination. Paragraph E Final Premium states
 "The premium shown on the Information Page, schedule, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy." (Defendants' Exhibit B and Liberty 6/25/96 supplement.)
 10. The Owner/Operator Lease Agreement issued on Sweeney letterhead describes in detail some twenty-four (24) duties and obligations of Sweeney and the owner/operator. These duties and obligations include the following, in addition to others:
 The owner/operator transports certain cargo which Sweeney desires to move within the scope of its ICC authority.
 The owner/operator must use his or her equipment with drivers to transport, load and unload expressly on behalf of Sweeney. CT Page 7787
 There is a weekly basis of settlement between Sweeney and the owner/operator.
 The owner/operator is at all times subject to the certification and endorsement by Sweeney with respect to equipment used and drivers hired.
 The owner/operator is required to contact Sweeney twice daily on each vehicle being operated for Sweeney.
 Sweeney provides identification decals showing Sweeney's name, ICC number, address and telephone number which must be affixed to the equipment, to be removed on termination of the agreement.
 The agreement is written with no termination date, but remains in force and effect unless canceled according to the terms of the agreement. (Joint Exhibit 1.)
 11. Eight drivers signing Form 6B (Officer of a Corporation) as notification to the Workers' Compensation Commission to be excluded from coverage as an officer of a corporation under the provisions of CGS § 31-275 list Sweeney as the "Name of Employer" to which notice is being given. Four drivers signing Form 75, a form used by a sole proprietor or partner to notify the Workers' Compensation Commission of the individual's intent to be included or excluded for coverage, list Sweeney as the employer on the form. (Claimant's Exhibit A.)
 12. Sweeney directs the owner/operator(s) in the mode and manner of performing their service for Sweeney as indicated in Sweeney's notice "ATTENTION ALL DRIVERS!!!!!", on form MDPU 2886. Sweeney directs drivers to assist in the unloading of "sweep" trucks, when and where to unload, how to unload, and the order of loading. (Claimant's Exhibit C.)
 13. The drivers report to the Sweeney Connecticut facility every day and have done so since Sweeney CT Page 7788 took over the company. (5/29/96 Tr. at 79.)
The record contains evidence supporting each finding. The conclusion from such findings that the truck drivers were employees was reasonable and logical. This is especially the case when the law is clear that Workers' Compensation laws should be liberally construed in favor of coverage of persons. The Workers Compensation Act "should be broadly construed to accomplish its humanitarian purpose." Adzima v. UAC Norden Division,177 Conn. 107, 117 (1979); Perille v. Raybestos-Manhattan-Europe. Inc.,196 Conn. 529, 541 (1985).
Plaintiff cites an unemployment compensation decision involving one of the same drivers, where a contrary decision was reached. This decision was considered by the hearing officer but rejected. It involved the application of a different law relating to unemployment; to which the Kalizewski "control" test is not applicable. The coverage of the unemployment act is dependent on a satisfaction of all components of a three part test, of which employer control is only one criteria. Latimer v. Administration,216 Conn. 237, 246 (1990).
The Appeal is dismissed.
McWEENY, J.