[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Hunter's Ambulance Service, Inc. (Hunter's), appeals to this court from a decision of the Commissioner of Public Health (Commissioner), dated November 21, 1997, on the plaintiff's Need For Expanded Services Application filed on July 24, 1996. This administrative appeal was timely filed on January 9, 1998, pursuant to Connecticut General Statutes § 4-183 et seq. The plaintiff claims that the Commissioner's decision was arbitrary, capricious and an abuse of discretion and, therefore, the plaintiff seeks review under Connecticut General Statutes § 4-183(j)(6).[1]
The plaintiff is licensed by the defendant State of Connecticut Department of Public Health (Department) to provide emergency medical services in the state. In its application, plaintiff had sought permission to expand its emergency services fleet by adding one emergency service vehicle, ten ambulances, and ten invalid coaches. As required by statute, the Department convened a public hearing to determine the necessity in the region for the proposed expanded service. A hearing officer designated by the Commissioner, Ann M. Moore, held hearings on the application on November 25 and December 9, 1996 and January 16, 1997, during which Hunter's presented evidence in support of its application. Three competing ambulance services were named as interveners and allowed to participate in the hearings. CT Page 11722
On June 17, 1997. the hearing officer issued a proposed Memorandum of Decision which concluded that Hunter's had demonstrated the need for one ambulance, one invalid coach and one emergency medical service vehicle. Hunter's was afforded the opportunity to file briefs and exceptions to the proposed decision, and to present oral argument to the Commissioner. In fact, Hunter's did file a detailed brief supporting its position, and on August 14, 1997, presented oral argument in support thereof.
On November 24, 1997, the Commissioner issued a final decision granting Hunter's application to the extent that it granted Hunter's two ambulances, two invalid coaches and one emergency medical service vehicle. It is from the Commissioner's final decision that this appeal is taken.
In this administrative appeal, briefs were filed by Hunter's on May 1, 1998, the Department on July 31, 1998, and Hunter's filed a reply brief on September 22, 1998. Oral argument was heard on September 23, 1998.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183(j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."
Furthermore, "[j]udicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public UtilityControl, 219 Conn. 51, 57-58 (1991). Similarly, "[w]ith regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgement for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St. Raphael v. Commission on Hospitals Health Care, 182 Conn. 314, 318 (1980). CT Page 11723
In the present case, Hunter's argues that the Commissioner's decision was merely a "rubber stamp of the Hearing Officer's decision," and that both were arbitrary, capricious and not based upon facts or law. Specifically, Hunter's claims that the Commissioner erred in not considering the proper maintenance of vehicles, the geographic area serviced by Hunter's, and the approval of the regional councils. Hunter's relies on the testimony and evidence introduced during the hearing concerning its difficulty in timely responding to calls, that its call volume has been increasing and it has been unable to satisfactorily keep up with the increase, that it has been unable to provide adequate maintenance for its vehicles because of a shortage of vehicles, that it has replaced former Middlesex Hospital ambulances in transferring certain patients, and a projected 16% increase in the volume of calls for the twelve months following the filing of its application, inter alia, in support of its argument. In its reply brief, Hunter's argues that substantial evidence exists in the record to support its position, but there is not substantial evidence to support the Department's decision.
The familiar principles of administrative law summarized above present a formidable obstacle to the overturning by the court of an administrative agency's factual findings. Nevertheless, if the record does not contain sufficient substantial evidence to support those findings, the court must reject them. Dolgner v. Alander, 237 Conn. 272 (1996).
"The `substantial evidence' rule governs judicial review of administrative factfinding under General Statutes § 4-183 . . . An administrative finding is supported by `substantial evidence' if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred . . . Such a standard of review allows less room for judicial scrutiny than does the `weight of the evidence' rule or the `clearly erroneous' rule . . . In determining whether an administrative finding is supported by `substantial evidence,' a court must defer to the agency's . . . right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part." (Citations omitted; internal quotation marks omitted.) Briggs v. State EmployeesRetirement Commission, 210 Conn. 214, 217 (1989). "[I]f the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding CT Page 11724 . . . the decision must be upheld." Conn. Building WreckingCo. v. Carothers, 218 Conn. 580, 601 (1991).
"[W]hen challenging an administrative agency action, the plaintiff has the burden of proof . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. In reviewing [an agency] decision made pursuant to the [Uniform Administrative Procedure Act], the reviewing court must sustain the [agency's] determination if an examination of the record discloses evidence that supports any one of the reasons given . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . ." (Citations omitted; internal quotation marks omitted.) Newtown v. Keeney, 234 Conn. 312, 319-20 (1995), quoting Samperi v. Inlands Wetlands Agency, 226 Conn. 579, 587-88
(1993); see also Dolgner v. Alander, supra, 237 Conn. 281.
Here, under Section 19a-180-6 of the Regulations of Connecticut State Agencies, the burden was on Hunter's to prove the need for the new or expanded emergency medical service CT Page 11725 requested. The parties agree that the Department, in determining the plaintiff's application, was required to consider Section19a-180-7 of the Connecticut Regulations which provides:
19a-180-7. Factors to be considered.
In determining whether a need for a new or expanded emergency medical service has been demonstrated, the Office shall consider the following factors:
(a) The population to be served by the proposed service;
 (b) The geographic area to be served by the proposed service;
 (c) The volume of calls for the previous 12 months within such areas;
 (d) The impact of the proposed service on existing services in the area;
 (e) The potential improvement in service in the area including cost effectiveness and response times;
 (f) The location of the proposed principal and branch places of business in relation to health facilities and other providers;
(g) The need for special services, if applicable; and
 (h) The recommendation of the applicable regional council.
It is clear that the Commissioner did consider the above factors in arriving at his decision. Indeed, the Commissioner's Final Memorandum of Decision, from which the plaintiff appeals, contains the following findings of fact, inter alia:
 2. The Emergency Medical Services Council, Inc. South Central Connecticut and the Eastern Connecticut Emergency Medical Services Council, Inc. recommended approval of the Applicant's application. The North Central Connecticut Emergency Medical Services Council, Inc. recommended approval for ten ambulances and ten invalid coaches, but did not make reference to the one emergency CT Page 11726 medical service vehicle. (Hearing Officer's Exhibits 4, 5 and 6)
* * *
 5. The Applicant is licensed and currently authorized to operate twenty (20) ambulances, sixteen (16) invalid coaches, and one (1) non-transport emergency service vehicle (intercept vehicle). (Hearing Officer's Exhibit 2, p. 5; Hearing Officer's Exhibit 3B, p. 1)
 6. The Applicant seeks approval of expansion of its existing fleet by adding ten (10) ambulances for a 50 percent increase in the ambulance fleet, ten (10) invalid coaches for a 62.5 percent increase in the invalid coach fleet, and one (1) non-transport emergency service vehicle for a 100 percent increase in the emergency service vehicle fleet. (Hearing Offices Exhibit 2, p. 6)
 7. The applicant has the burden of establishing the need for the requested service within the criteria set forth in Sections 19a-180-2 (a) through (e), and Sections 19a-180-7 (a) through (h) of the Regulations of Connecticut State Agencies.
* * *
 10. The Applicant's proposed service area includes Clinton, Madison, Guilford, Durham, Wallingford, Southington, New Britain, Newington, Wethersfield, Glastonbury, Manchester, Marlborough, Colchester, Salem, Montville, Bozrah, Franklin, Spraque, Lisbon, Griswold, Voluntown, North Stonington, Stonington, Groton, New London, Waterford, East Lyme, Old Lyme, Old Saybrook and Westbrook. (Hearing Officer's Exhibit 2, Section 3.01; Tr. 11/25/96, p. 6)
 11. Applicant's organization is almost totally committed to providing invalid coach, ambulance, and paramedic service in the areas of Meriden, Wallingford, Berlin, Portland, Middletown, and Middlefield. Applicant provides backup service in New Britain, Chester and Haddam with ten percent of their capacity dedicated to service in New London County.
 12. The population of the service area is 546,064. This CT Page 11727 represents a 4% or 23,176 person decline in the population of the area since 1990. (Hearing Officer's Administrative Notice, Tr. 1/16/97, p. 101-102; Medtrans CT Inc.'s Prefiling of Testimony Documentary Evidence 1/15/97).
 13. The Applicant has bases in Meriden, Wallingford, Berlin, Middletown, and New London. (Hearing Officer's Exhibit 2, Section 4.05)
 14. There are seventy-eight (78) long term health care facilities located within the Applicant's proposed service area. (Hearing Officer's Exhibit 3B Schedule 3.05)
 15. There are fifty (50) providers located within the Applicant's proposed service area. (Hearing Officer's Exhibit 3B Schedule 3.03)
 16. In the year preceding the application, the Applicant responded to approximately 50,648 calls. (Hearing Officer Exhibit 2, Section 4.01) The Applicant refused approximately 160 calls. Efforts were made to refer some calls to American Ambulance Service, Inc. and American Medical Response of CT, Inc. (Hearing Officer's Exhibit 2, Section 4.02; Tr. 11/25/96 p. 101-103)
 17. American Ambulance Service, Inc. has received no more than three (3) calls form the Applicant for backup service in as many years. (Brief of American Ambulance Service, Inc. p. 8)
 18. In its Application for Expansion of Service, Applicant is projecting that the volume of calls for the next twelve months will increase sixteen (16) percent to 58,891 calls. (Hearing Officer's Exhibit 2, Sections 3.06 and 3.07)
 19. In its 1997 Rate Application filed with OEMS, the Applicant projected its call volume to be 54, 618 calls. This is half of the percentage increase predicted in the Need for Service Application and reflects an eight (8) percent increase over the previous year.
 20. Several health care facilities have complained because CT Page 11728 the Applicant has been late to a call or has not been able to provide service when requested. Complaints have also been received about the cost of service. (Tr. 12/9/96; Applicant's Exhibits 15, 16A)
 21. Due to lack of available vehicles, Applicant is sometimes unable to deliver-on-time, quality non-emergency transportation. (Tr. 12/9/96 p. 35)
 22. In 1995, 20.2% of Applicant's ambulance calls were late and 19% of Applicant's invalid coach calls were late. For the first six months of 1996, 22.9% of ambulance calls were late and 13.3% of invalid coach calls were late. (Applicant's Exhibit 14)
 23. The average response time for emergency calls reported by the Applicant was approximately seven (7) minutes. (Hearing Officer's Exhibit 2, Section 4.03)
 24. Applicant's testimony indicated that it is in need of four (4) additional ambulances and three (3) additional invalid coaches to enable them to perform proper routine and unscheduled maintenance. (Tr. 11/25/96 p. 87-88; Applicant's Exhibit 10, 11, 12, and 13)
 25. Applicant's testimony also indicated that it is in need of two (2) additional ambulances and two (2) additional invalid coaches for maintenance and service. (Tr. 11/25/96 p. 62)
 26. When Applicant's emergency medical service vehicle is unavailable due to maintenance and a call must be answered, it is sometimes necessary to send a full ambulance with a paramedic on board. (Tr. 12/9/96 p. 34)
 27. Applicant's 1996 annualized unscheduled maintenance hours due to damage to the vehicle were 1,216 for ambulances and 1,099 for invalid coaches. (Applicant's Exhibit 21)
 28. Applicant's 20th ambulance was added to its fleet on June 19, 1996 and is not reflected in the data relative to the Need For Expanded Service Application dated May 24th, 1996. (Hearing Officer's Exhibit 3A)
(Return of Record (ROR, Volume I, Decision, pp. 4-8.) CT Page 11729
Additionally, included within the Conclusions of Law And Discussion section of the Commissioner's decision, inter alia, are the following:
* * *
 6. The population of the service area is 546,064 which is a decline of four (4) percent since 1990.
 7. The geographic area to be served is Clinton, Madison, Guilford, Durham, Wallingford, Southington, New Britain, Newington, Wethersfield, Glastonbury, Manchester, Marlborough, Colchester, Salem, Montville, Bozrah, Franklin, Spraque, Lisbon, Griswold, Voluntown, North Stonington, Stonington, Groton, New London, Waterford, East Lyme, Old Lyme, Old Saybrook and Westbrook.
 8. The Applicant projects a sixteen 16 percent increase in call volume for the next twelve months for a total of 58,891 calls. Conversely, Applicant has also projected an eight (8) percent increase for the next twelve months. Countering these projections is a historic decrease in the population in the service area. Also notable is that less than one (1) percent of all calls were refused by the Applicant. Furthermore, recently the percentage of calls for invalid coaches which were late has decreased and there has been a small increase in the percentage of calls which were late for ambulances. Even taken in the most favorable light, the Applicant has failed to provide credible basis for growth in call volume sufficient to support the large number of vehicles requested in the application.
 9. Applicant's testimony conflicted as to the number of vehicles necessary to ensure the delivery of proper routine and unscheduled maintenance. The need for additional vehicles for these purposes was mitigated in part by the addition of the twentieth vehicle in June 1996.
 10. Proper routine and unscheduled maintenance will enhance service in the area including cost effectiveness and response times.
 11. The data presented in the Need For Expanded Services CT Page 11730 Application does not reflect Applicant's 20th ambulance which was put into service in June of 1996.
12. The Applicant has a satisfactory emergency response time.
 13. There were no special services at issue in this application.
 14. The proposed service area contains approximately seventy-eight (78) health care facilities and fifty (50) providers.
 15. The Emergency Medical Services Council, Inc. South Central Connecticut and the Eastern Connecticut Emergency Medical Services Council, Inc. recommended approval of the Applicant's application. The North Central Connecticut Emergency Medical Services Council, Inc. recommended approval for ten ambulances and ten invalid coaches, but did not make reference to the one emergency medical service vehicle.
* * *
 18. The evidence presented was not sufficient to establish a need for all of the requested additional vehicles, but was sufficient to establish a need for two (2) additional ambulances, two (2) additional invalid coaches, and one additional emergency medical service vehicle.
(ROR, Volume I, Decision, pp. 10-12.)
This court, having reviewed the entire record presented, finds that there is substantial evidence in the record to support the Commissioners findings. For example, in the year preceding its application, Hunter's had responded to approximately 50,648 calls and had refused 160 calls, approximately .3% of the total calls received. The twentieth ambulance, which Hunter's added in June, 1996, was not available when the 160 calls had been refused. Importantly, the population of the area serviced by the plaintiff had declined by 4% since 1990. The plaintiff's average response time for emergency calls was seven minutes, which was deemed satisfactory. While Hunter's had, at times, been unable to provide timely non-emergency transportation, the percentage of late invalid coach calls had declined significantly in the months prior to the application. Hunter's projection of a 16% increase CT Page 11731 in call volume for the next twelve months was contradicted by its own projection of an 8% increase in call volume for the same period. Finally, although the plaintiff complains that the actual number of vehicles awarded was arbitrary, there was testimony from Hunter's that two additional ambulances and two additional invalid coaches would enable the plaintiff to respond to calls and concurrently ensure proper maintenance and service of its fleet. (ROR, Volume VI, transcript 11-25-96, p. 62.)
Based on all of the foregoing, this court finds that there is substantial evidence in the record to support the Commissioner's findings and conclusions. The Commissioner's decision was not arbitrary, capricious nor an abuse of discretion, but was based on a fair reading and application of the evidence presented.
Accordingly, the Commissioner's decision is affirmed and this appeal is dismissed.
Hartmere, J.