PETER STANDISH ET AL. *v.* SOTAVENTO
CORPORATION ET AL.
(AC 18677)

Foti, Hennessy and Daly, Js.

Argued February 23—officially released July 18, 2000

*Bernard Green*, with whom, on the brief, was *Marni Smith Katz*, for the appellants (plaintiffs).

*Edward V. O'Hanlan*, with whom, on the brief, was *John P. McKinney*, for the appellee (named defendant).

*Opinion*

HENNESSY, J. The plaintiffs[1] appeal from the judgment of the trial court rendered following the granting of a motion for summary judgment filed by the named defendant, Sotavento Corporation (Sotavento), a licensed Connecticut brokerage.[2] On appeal, the plaintiffs claim that the court improperly concluded that there were no genuine issues of material fact in dispute. We affirm the judgment of the trial court.

The following facts were before the court. The plaintiffs, limited partners of the defendant Morningside Partners Limited Partnership (Morningside), commenced this derivative action in two counts against Sotavento,[3] Morningside and the defendant Charles Lemieux, the general partner of Morningside, seeking to invalidate a promissory note and mortgage executed in favor of Sotavento on certain property owned by Morningside. The note and mortgage were executed on October 26, 1995. The complaint alleged that Lemieux, while purportedly acting as the general partner of Morn-

---

[1] The named plaintiff, Peter Standish, is joined in this appeal by a number of limited partners of Morningside Partners Limited Partnership.

[2] Only the defendant Sotavento filed a motion for summary judgment in the trial court and the plaintiffs appeal from the judgment of the court rendering summary judgment in favor of Sotavento. The remaining defendants, Charles P. Lemieux and Morningside Partners Limited Partnership, are not parties to this appeal.

[3] Sotavento's principal officer is Samuel Braunstein. Braunstein is also a partner is the law firm of Braunstein & Todisco, LLC, and was counsel for Lemieux and Morningside.

ingside and on behalf of all of its partners, signed a revolving credit agreement with Sotavento and executed a note in favor of Sotavento in the amount of $150,000. The note was secured by a mortgage on property owned by Morningside.[4] According to the complaint, Lemieux acted without authority in making the note and mortgage. The complaint also alleged that the note and mortgage were executed for uses and purposes that were not in the interests of Morningside or in furtherance of its business and that they were executed by Lemieux for his own benefit. The complaint further alleged that Sotavento was or should have been aware of Lemieux's intent.[5]

Sotavento filed a motion for summary judgment against the plaintiffs, claiming that there were no genuine issues of material fact as to whether Lemieux was authorized to execute the note and to enter into the credit agreement on behalf of Morningside, and that it was entitled to judgment as a matter of law. The trial court granted Sotavento's motion for summary judgment, and this appeal followed.

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the

---

[4] The trial court found: "Under the terms of the agreement, Sotavento would receive funds payable to Morningside. In return, Sotavento would disburse these funds to pay various debts owed by Morningside. Additionally, Sotavento extended a credit of $150,000 to Morningside to cover debts which the incoming moneys might not have covered."

[5] The first count of the complaint alleged that the actions of Sotavento and Lemieux jeopardized the assets of Morningside and made property that was owned by Morningside subject to foreclosure. The plaintiffs further alleged in count one that "[i]t is unfair, inequitable and in violation of law for Sotavento to have the benefit of the note and mortgage referred to." In the second count, the plaintiffs alleged that the actions of Lemieux and Sotavento constituted a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . *Tarzia* v. *Great Atlantic & Pacific Tea Co.*, 52 Conn. App. 136, 145, 727 A.2d 219 (1999).

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Avon Meadow Condominium Assn., Inc.* v. *Bank of Boston Connecticut*, 50 Conn. App. 688, 693, 719 A.2d 66, cert. denied, 247 Conn. 946, 723 A.2d 320 (1998)." (Internal quotation marks omitted.) *Kramer* v. *Petisi*, 53 Conn. App. 62, 66–67, 728 A.2d 1097, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999).

The plaintiffs claim that disputed issues of material fact exist as to whether Lemieux's acts in executing the mortgage loan documents were within the scope of his authority as general partner and whether Sotavento knew or should have known as such. We disagree.

General Statutes (Rev. to 1995) § 34-47[6] provides that the actions of a general partner in carrying on the business of the partnership bind the partnership if the gen-

---

[6] General Statutes (Rev. to 1995) § 34-47 provides in relevant part: "Actions of partners. (1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

eral partner acts within the scope of his authority. If the general partner in fact has no authority to act for the partnership in the matter and the party with whom the general partner is dealing knows that he is acting outside the scope of his authority, then the acts of the general partner do not bind the partnership. See *Connecticut National Bank* v. *Cooper*, 232 Conn. 405, 417, 656 A.2d 215 (1995).

The purpose of Morningside as stated in the partnership agreement is "to acquire, finance, manage, and operate the Property . . . ." In furtherance of this purpose, the general partner is given a broad range of powers. Specifically, the partnership agreement states that "[t]he general partner shall manage the business and affairs of the Partnership and shall have all power and authority necessary, useful or convenient for him to do so . . . ." In particular, the general partner has the authority to "[a]cquire, manage, sell, transfer, distribute, finance or refinance any property or assets owned by the Partnership" and to "[e]mploy personnel . . . including contractors, brokers, mortgage lenders, leasing agents, consultants, on site managers, insurance members, attorneys . . . and other agents or professionals . . . ." The plaintiffs point out that under the terms of the limited partnership agreement, Lemieux was authorized to act on behalf of Morningside only "[i]n furtherance of the purposes of the [Limited] Partnership." In addition, his authority is limited to those activities that are "necessary, useful or convenient" to

---

"(2) An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners.

\* \* \*

"(4) No act of a partner in contravention of a restriction on authority shall bind the partnership to persons having knowledge of the restriction."

Section 34-47 was repealed by Public Acts 1995, No. 95-341, § 57, effective July 1, 1997.

enable him to "manage the business" of the limited partnership.

The plaintiffs do not claim that Lemieux lacked the authority to enter into the agreement to borrow money to further the purposes of the partnership or to execute the documents evidencing that agreement. Rather, they argue that various actions by Lemieux under the terms of the loan were outside the scope of his authority because, instead of acting "in furtherance of the purposes of the Partnership," he acted for his own benefit. Specifically, the plaintiffs point to loan advances to Lemieux made by Sotavento, at least one of which allegedly was in payment of legal fees incurred by Samuel Braunstein, the principal officer of Sotavento, in connection with his defense of a disciplinary complaint. According to the plaintiffs, the actions taken by Lemieux for purposes outside the scope of the partnership were known to Braunstein, who also acted as attorney to Lemieux and Morningside. In addition, the plaintiffs claim that Braunstein, as president of Sotavento, knew or should have known that some of the loan advances were intended for purposes other than those of the limited partnership.

The court found that the issues claimed by the plaintiffs, "while raising questions of material fact concerning the amount of money allegedly owed to Sotavento, [did] not raise any questions of material fact as to the legitimacy of the revolving credit agreement (and note) entered into by Sotavento and, via Lemieux, Morningside Partners." The court further found that the evidence offered by the plaintiffs did not raise any issues of fact about Lemieux's authority to enter into the credit agreement. In addition, the court found that "[w]hile the power of the general partner is limited to the furtherance of the aims and goals of the limited partnership, [the plaintiffs have] not offered any evidence which would show that Sotavento knew that, at the time the

agreement was entered into, Lemieux intended to use the loan proceeds for nonlimited partnership uses." We agree with the court.

It is clear from a reading of the partnership agreement that Lemieux, as general partner of Morningside, had broad authority, including the authority to borrow money and encumber the partnership assets in so doing. There also is no evidence that Sotavento knew that Lemieux intended to use the proceeds of the loan for expenditures not authorized under the partnership agreement. The law is clear: "The manifest intent of § 34-47 (4) is to protect innocent partners, in this instance limited partners, from the undertakings of a general partner in contravention of a specific restriction on the authority of the general partner, when the restriction is known to the third party with whom the partner is dealing. The purpose of placing a restriction on a general partner's authority in a partnership agreement and the policy embodied in § 34-47 (4) would be defeated if one who was aware of a restriction on a partner's authority could ignore the restriction and hold the partnership to an unauthorized agreement." *Connecticut National Bank* v. *Cooper*, supra, 232 Conn. 417. There was no evidence before the court that would allow it to conclude that Sotavento knew that Lemieux executed the loan documents without authorization or that he acted beyond the scope of his authority. The partnership agreement fully authorized Lemieux to borrow money on behalf of Morningside and sign a note and mortgage. It is clear that the partnership was in financial and legal difficulties and needed credit to deal with these problems and that Lemieux acted accordingly.

The plaintiffs rely on *Case* v. *Connelly*, Superior Court, judicial district of Litchfield, Docket No. 046353 (September 6, 1990), in which the court held that certain mortgages were unenforceable because the general

partner borrowed the funds for his own purposes and the funds were paid to the general partner rather than the partnership. In that case, however, the court found that the mortgage lenders had knowledge that the mortgage was prohibited by the partnership agreement and that the individual partner that had borrowed the money did so for his own personal uses. In the present case, the court did not find such similar circumstances.

Lastly, the plaintiffs contend that there is a disputed issue of material fact as to whether the loan instruments and loan advances are unenforceable because Braunstein breached his fiduciary duty to Morningside and Lemieux, thereby violating the Rules of Professional Conduct. The plaintiffs base this contention on the fact that although Braunstein was president of Sotavento, he also acted as counsel for Lemieux and Morningside in connection with the execution of the mortgage and note securing the loan from Sotavento. They claim that he therefore owed a fiduciary duty to Morningside. The plaintiffs claim that he breached that duty and violated the Rules of Professional Conduct when he, as an attorney, entered into a business transaction with a client and failed to inform the client, *in writing*, that the client should seek advice from independent counsel. In the present case, Braunstein had orally advised Lemieux to seek advice from another attorney and Lemieux, following that advice, had other attorneys review and ratify the agreements.

The court properly determined that the issue of whether Braunstein had violated the Rules of Professional Conduct is a matter properly addressed to the statewide grievance committee.

Even if Braunstein's actions did constitute such a breach, that would not create an issue of material fact that would preclude the granting of a motion for summary judgment. "Violation of a Rule [of the Rules of

Professional Conduct] should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability." (Internal quotation marks omitted.) *Mozzochi* v. *Beck*, 204 Conn. 490, 501 n.8, 529 A.2d 171 (1987), quoting Rules of Professional Conduct, Preamble (1986); see also *Noble* v. *Marshall*, 23 Conn. App. 227, 231, 579 A.2d 594 (1990) ("the Rules of Professional Conduct do not of themselves give rise to a cause of action, even as to an attorney's client"). Accordingly, the court properly concluded that there was no merit to the plaintiffs' claim that there is a material fact in dispute as to whether Braunstein breached the Rules of Professional Conduct.

Because the general partner had authority to enter into the revolving credit agreement and because the plaintiffs did not raise a genuine issue of material fact as to whether Sotavento had knowledge that the general partner did not have authority to do so, we conclude that the court properly found that there were no material facts in dispute with regard to the enforceability of the mortgage agreement.

The judgment is affirmed.

In this opinion the other judges concurred.