[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff in the above-captioned matter is a member of the Connecticut bar. He appeals pursuant to Practice Book § 2-38 from a decision of the Statewide Grievance Committee. The Grievance Committee concluded that the plaintiff violated the following Rules of Professional Conduct: Singer, complaint No. 95-0557-Rules 1.7(a), and 1.13(e);Grossman, complaint No. 95-0393-Rules 1.7(b), 1.8 and 1.13(e) (Return of Record, ("ROR"), Items #98, p. 998; #99, p. 1004; #101, p. 1050; #102, p. 1051). The plaintiff was reprimanded by the Statewide Grievance Committee.
The review committee heard evidence over the course of several days. At the hearings, a number of individuals testified and many exhibits were introduced. The voluminous record of the appeal consists of in excess of one thousand pages of materials. In accordance with the agreement of all involved parties, the record was made applicable to both cases.
In connection with their appeal, the parties filed comprehensive briefs with the court articulating their respective positions on the disputed issues. Additionally, the court heard extensive oral argument from counsel.
As a threshold principle of law it must be noted that:
 "[a]n attorney is admitted to the practice of law on the implied condition that the continuation of this right depends on remaining a fit and safe person to exercise it. The Rules of Professional Conduct bind attorneys to uphold the law and to act in accordance with high standards in both their personal and CT Page 2341 professional lives. See Preamble to Rules of Professional Conduct. As officers and commissioners of the court, attorneys are in a special relationship with the judiciary and are subject to the court's discipline. It is well established that judges of the Superior Court possess the inherent authority to regulate attorney conduct and to discipline the members of the bar." (Internal quotation marks and citations omitted.)
Statewide Grievance Committee v. Egbarin, 61 Conn. App. 445, 450-51___ A.2d ___ (2001).
 Further, "[a]n attorney, as an officer of the court, is continually accountable to the court for the manner in which the privilege to practice law is exercised and is subject to the court's discipline. Because the image of a dishonest lawyer is very difficult to erase from the public mind-set, attorneys are expected to be leading citizens who act with candor and honesty at all times. An attorney is admitted to the practice of law on the implied condition that the continuation of this right depends on remaining a fit and safe person to exercise it." (Internal quotation marks and citations omitted.)
Statewide Grievance Committee v. Fountain, 56 Conn. App. 375, 377,743 A.2d 674 (2000).
The plaintiff contends that certain critical findings made by the committee were not proven by clear and convincing evidence. He argues that "[t]he Committee's findings, inferences, conclusions and decision are (1) in violation of constitutional, rules of practice and statutory provisions; (2) in excess of the authority of the Committee; (3) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; and (4) affected by other error of law." (Plaintiff's Brief, p. 1) The committee responds by asserting that the findings are supported by substantial evidence in the record and not otherwise in violation of constitutional or statutory law. (Defendant's Brief, pp. 4 et seq.)
 I. Scope of Review by the Court
Practice Book § 2-38(f) provides, in relevant part, "[u]pon appeal, the court shall not substitute its judgment for that of the CT Page 2342 statewide grievance committee or reviewing committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1) In violation of constitutional, rules of practice or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Practice Book §2-38(f).
The Uniform Administrative Procedure Act (UAPA), § 4-166, et seq., does not apply to the Grievance Committee, but the same principles as to the scope of judicial review are applicable. Pinsky v. StatewideGrievance Committee, 216 Conn. 228, 234-35, 578 A.2d 1075 (1990). The role of the court "is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct." (Internal quotation marks and citations omitted.) Weiss v.Statewide Grievance Committee, 227 Conn. 802, 812, 633 A.2d 282 (1993). "The burden is on the . . . committee to establish the occurrence of an ethics violation by clear and convincing proof." Id. Allegations of attorney misconduct must be proven by clear and convincing evidence, regardless of the nature of the sanctions ultimately imposed. StatewideGrievance Committee v. Presnick, 215 Conn. 162, 17 1-72, 575 A.2d 210
(1990). "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . .Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of evidence or questions of fact." (Internal quotation marks and citations omitted.) Dolgner v. Alander, 237 Conn. 272, 280, 676 A.2d 865 (1996).
 "The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183(j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to CT Page 2343 provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action." (Internal quotation marks and citations omitted; footnote omitted.)
Dolgner v. Alander, supra, 237 Conn. 281.
 Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Internal quotation marks and citations omitted.) Id.
 Finally, "[a] reviewing court must defer to the discretion of the fact finder, whether it be the trial court or the committee, because the fact finder is in the best position to evaluate the evidence and the demeanor of the parties. [E]very reasonable presumption should be given in favor of the correctness of the [fact finder's] ruling." (Internal quotation marks and citations omitted.) Statewide Grievance Committee v. Egbarin, supra, at 458.
II. Rules Found to Have Been Violated by the Statewide Grievance Committee
In Singer, the committee found violations of 1.7(a) and 1.13(e) of the Rules of Professional Conduct.[1][2] In Grossman the committee found violations of 1.7(b), 1.8(a) and 1.13(e) of the Rules of Professional Conduct.[3][4]
III. Plaintiff's Claims of Error
(A) Denial of Due Process Claim
The committee concluded in relevant part that the plaintiff represented the entity of Morningside Partners Limited Partnership (hereinafter "Morningside"), as well as Charles LeMieux (hereinafter "LeMieux") as a general partner. (ROR, Item #99, p. 1008). The plaintiff maintains that this finding is made in violation of his constitutionally protected rights of due process of law. Specifically, he claims that it exceeds the scope of the probable cause finding. Accordingly, he argues that he was not given the requisite prior notice that he was charged with unethical conduct by representing LeMieux in his capacity as general partner of Morningside. CT Page 2344
The committee's probable cause finding states that:
 The Committee found probable cause that the Respondent engaged in a conflict of interest without proper disclosure and consent, in violation of Rules 1.7 and 1.13(e) of the Rules of Professional Conduct, by representing Mr. Charles LeMieux and the entities of Avon Financial Services Ltd., LLC; Kings West Limited Partnership. and Morningside Partners Limited Partnership. The Committee also found probable cause that the Respondent had a personal interest in Sotovento Corporation so as to create a conflict of interest in violation of Rules 1.7(b), 1.8 and 1.13(e) of the Rules of Professional Conduct, regarding the Respondent's involvement in mortgages of $150,000.00 on property owned by Morningside Partners Limited Partnership.
(ROR, Item #28, p. 317, emphasis added.)
The limitations on the scope of the probable cause finding were discussed on several occasions during the course of the evidentiary hearing. (e.g. ROR, Item #60, pp. 433, 456, 494.)
In Statewide Grievance Committee v. Egbarin, supra at 456, the Appellate Court addressed the issue of due process in the context of attorney disciplinary proceedings stating, "[b]ecause a license to practice law is a vested property interest, an attorney subject to discipline is entitled to due process of law. In attorney grievance proceedings, due process mandates that before discipline may be imposed, an attorney is entitled to notice of the charges, a fair hearing and an appeal to court for a determination of whether he or she has been deprived of these rights in some substantial manner. Regarding the notice required to satisfy due process, the presentment must be sufficiently intelligible and informing to advise the court of the matter complained of, and the attorney of the accusation or accusations made against him, to the end that . . . the latter may prepare to meet the charges against him. . ." (Internal quotation marks and citations omitted.) See also StatewideGrievance Committee v. Botwick, 226 Conn. 299, 627 A.2d 901 (1993).
In applying the applicable law to the record, the court finds that the plaintiff did not have the requisite notice that the charges included a conflict of interest resulting from the plaintiff undertaking legal representation of LeMieux as general partner and the entity of CT Page 2345 Morningside.
Accordingly, the committee's finding is ordered vacated and the appeal is sustained with respect to this particular issue.
(B) Committee's Finding that the Plaintiff Represented LeMieuxIndividually
The committee found by clear and convincing evidence that the plaintiff represented LeMieux individually while simultaneously representing the entity of Morningside. The plaintiff contends that "[t]here is no evidence in the record — let alone the requisite "clear and convincing' evidence — that Respondent or his firm ever represented Charles LeMieux." (Plaintiff's Brief p. 5). Accordingly, dual representation did not occur and a conflict could not exist.
All parties agree that the plaintiff represented the entity of Morningside. The reviewing committee had before it a substantial amount of evidence on the question of the plaintiff's representation of LeMieux individually. The court's examination of the record reveals, as just a portion of the evidence, the sworn testimony of the plaintiff. On one of a number of occasions in which he testified he stated:
BY MR. ELLIOT
Q. Mr. Braunstein, have you ever represented Charles LeMieux in his individual capacity?
A. Never.
Q. Has your office ever represented Charles LeMieux in his individual capacity?
A. Never.
Q. Has your partner, Ms. Todisco, ever represented Charles LeMieux in his individual capacity?
A. Based on her representations to me and my personal knowledge of all the clients and work we do in the firm, never.
Q. Has Mr. LeMieux ever told you that you represented him personally?
A. Never. CT Page 2346
(ROR, Item #60, p. 495.)
The plaintiff also introduced a September 19, 1996 affidavit by LeMieux in which he stated in part, "[a]t no time have I ever been represented by Samuel L. Braunstein, Esq. or the law firm of Braunstein Todisco, LLC as an individual and I have never represented to anyone that either he or his firm have ever represented me individually. My only contact with either Attorney Braunstein or his firm has been in his/its capacity as attorney for the entities of Morningside Partners Limited Partnership, Kings West Limited Partnership, Kings West Realty, Inc., Avon Financial Services LLC and Riverview Restaurant Inc." (ROR, Item #50, p. 342.)
Finally, the plaintiff provided the committee with an affidavit of Suzanne Weinstock dated September 30, 1996. (ROR, Item #51, p. 343). The affidavit and attachments contain the results of a computer search of court records in several Superior Court Judicial Districts, as well as the Connecticut Federal District Court for cases in which the plaintiff may have entered an attorney's appearance for LeMieux and Morningside. The search did not disclose any appearances filed by the plaintiff.
The complaining parties presented to the committee evidence which they contend supported a finding that the plaintiff represented LeMieux individually. In part this evidence included a September 29, 1995 letter from LeMieux to William Grossman.[5] (ROR Item #9, p. 31.) LeMieux stated in part:
 Effective immediately, I am initiating steps to disengage my affairs from yours — in all respects. Such will, of course, require that various financial ventures in which we are currently involved, directly and indirectly, be terminated, "wound down" or otherwise disposed of — hopefully in an orderly manner and in such a way that we can salvage whatever may be left, both as to our reputations and our financial resources.
 In order to assist me in this particular phase of my career, I have engaged the services of the law firm of Braunstein Todisco, LLC, One Eliot Place, Fairfield, Connecticut 06430 as my counsel.
 Accordingly, as to any and all questions involving the above referenced situation and the matters which will necessarily ensue from such, either you or your (new) counsel are instructed to contact Samuel L. CT Page 2347 Braunstein, Esq., of that firm for by discussions — I will not be available.
Id. (emphasis added to paragraph 2).
Also introduced was a letter dated December 17, 1996 from Attorney Richard D. Zeisler. (ROR, Item #77, p. 713.) In this letter to William Grossman, Attorney Zeisler comments on his recollection of a meeting which he, Grossman, and the plaintiff attended. Attorney Zeisler states that "[a]t that meeting, we discussed that the disputes then existing between [William Grossman], [Adrienne Grossman's] trust, and Mr. LeMieux individually and as the partner in certain partnerships. My best recollection as to those meetings was that nothing was accomplished based upon Mr. Braunstein's representations at that time that the differences between [William Grossman] and Mr. LeMieux could be resolved only upon payment of what appeared to be a very large sum of money. . . .Clearly, Braunstein indicated that upon such a payment, [William Grossman's] problems with Mr. LeMieux in all areas would be resolved and he further indicated that without such payment, significant problems for [Grossman] and the trust would continue." Id.
Peter Standish, a limited partner in Morningside, testified that "Mr. LeMieux informed [him] very early October and Mr. Donahue[6] that Sam Braunstein was [Mr. LeMieux's] attorney on all these matters of dispute with Mr. Grossman and also would be the attorney for Kings West and for One Morningside. And shortly thereafter we received letters from either Braunstein or LeMieux or both addressed at One Eliot Street, you know."[7] (ROR, Item #60, p. 478.)
The committee also had before it for consideration a November 1, 1995 letter from LeMieux to a David Goldschild, which stated in relevant part:
 During the past few weeks, in order to protect our Partnership property and our investments in the Partnership (and in accordance with the provisions of our Partnership Agreement), your General Partner has made several changes regarding management and certain other entities which had been performing services for our property. The following is a brief summary and our conclusions.
 Please note the temporary change of address for the Partnership. Until you are advised otherwise by the undersigned, the address is as follows: Morningside CT Page 2348 Partners Limited Partnership do Braunstein Todisco, LLC Attorneys at Law One Eliot Place Fairfield, Connecticut 06430
(ROR, Item #78, p. 714)
The plaintiff testified that he permitted LeMieux to use his law office as Morningside's mailing address as a courtesy. (ROR, Item #95, p. 921). However, the committee also received as evidence a letter dated November 14, 1995 from LeMieux to William Grossman demanding retraction of alleged "libelous charges" (ROR, Item #93, p. 881). The letter was mailed via certified mail in one of the plaintiff's law office envelopes. (ROR, Item #94, p. 882).
Finally, regarding the evidence pertaining to the absence of attorney appearances, the plaintiff acknowledged that the nature of his law practice does not include litigation. (ROR, Item #95, p. 921). An attorney's appearance is, of course, filed with the court in connection with litigation. See Connecticut Practice Book § 3-1 et seq.
The reviewing committee was presented with conflicting evidence on the question of whether the plaintiff represented LeMieux in his individual capacity. The committee answered this question in the affirmative, concluding that the issue had been proven by clear and convincing evidence. In so finding, the committee stated that it "did not find the Respondent's testimony credible." (ROR, Item #99, p. 1009). As previously discussed, the role of the court upon appeal is very limited. It is not appropriate for the court to "substitute its judgment for that of the statewide grievance committee or reviewing committee as to the weight of the evidence on questions of fact." Practice Book § 2-38(f).
Thus, the court finds that the record contains substantial evidence which the reviewing committee chose to credit in support of its finding that the plaintiff represented LeMieux individually. "The question is not whether the court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St.Raphael v. Commission on Hospitals Health Care, 182 Conn. 314, 318,438 A.2d 103 (1980). In light of the substantial evidence presented, it was not unreasonable for the reviewing committee to have concluded that the plaintiff represented LeMieux in his individual capacity while at the same time representing the entity of Morningside.
 (C) The Plaintiff's Claim That Rules 1.7(a) and 1.13(e) Are Not Applicable To The Present Case
CT Page 2349
The committee found by clear and convincing evidence that "[t]he Respondent's representation of LeMieux individually was directly adverse to the Respondent's representation of the entity of Morningside. . . .The Respondent's representation of LeMieux and the entity of Morningside without obtaining each client's consent after consultation constituted a violation of Rules 1.7 and 1.13(e) of the Rules of Professional Conduct." (ROR, Item #99, p. 1008).
The plaintiff contends that "Rule 1.7(a) is not implicated in this caseeven if complainants' version of the facts is believed. `Direct adverseness' under Rule 1.7(a) has uniformly been understood as comprehending suing your client or otherwise adopting an adversary posture toward your client." (Plaintiff's Brief pp. 8-9.) It was undisputed that LeMieux was the general partner of Morningside, and that the plaintiff had been retained to represent Morningside. The committee found by clear and convincing evidence that the plaintiff simultaneously represented Morningside and Mr. LeMieux individually.
Rule 1.7(a) provides in relevant part that "[a] lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless . . . [t]he lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and . . . [e]ach client consents after consultation." Rule 1.13(e) states in relevant part, "[a] lawyer representing an organization may also represent any of its . . . members, shareholders or other constituents subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders."
In reference to Rule 1.7 our Supreme Court has commented that, "our Rules of Professional Conduct are punctuated with exhortations that an attorney's loyalty to the client is to be undivided and unaffected by other interests that would impair the attorney's independent judgment."Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 727 fn. 16, 627 A.2d 374
(1993). The commentary to the Rules note that "[l]oyalty is an essential element in the lawyer's relationship to a client. An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. . . .As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent. Subsection (a) expresses that general rule . . . Subsection (a) applies only when the representation of one client would be directly adverse to the other." Rule 1.7, Official Commentary. CT Page 2350
The plaintiff is correct in commenting that Rule 1.7(a) forbids representation of opposing parties in litigation. This court is not persuaded, however, that it represents the exclusive situation covered by the Rule. There are various conceivable circumstances in which the interests of clients would be directly adverse to one another outside the parameters of litigation. "Conflicts of interest in contexts other than litigation sometimes may be difficult to assess. Relevant factors in determining whether there is potential for adverse effect include the duration and intimacy of the lawyer's relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that actual conflict will arise and the likely prejudice to the client from the conflict if it does arise. The question is often one of proximity and degree." Rule 1.7, Official Commentary.
The committee was presented with evidence that Morningside was a limited partnership. The principal purpose for its existence was the ownership of a professional office building located at One Morningside Drive North, Westport, Connecticut. (ROR, Item #60, p. 452; Item #24, p. 219). LeMieux acted as the general partner. The limited partners included complainant Singer, Donahue, and Standish. (ROR, Item #60, pp. 452, 486). In 1995 Morningside was delinquent in paying taxes to the town of Westport. (ROR, Item #65, pp. 567-568) On June 28, 1995 a municipal tax lien had been filed on the land records. Id. The lien discloses a $61,112.26 tax debt. Id. In addition, the mortgage on the property was not being paid and monies were missing from bank accounts. (ROR, Item #81, pp. 751-752). It was LeMieux's responsibility acting as the general partner to pay the taxes and mortgage on the Morningside property. (ROR, Item #81, p. 752).
On October 26, 1995 LeMieux obtained a $150,000.00 second mortgage on the Morningside property from Sotovento Corporation (hereinafter "Sotovento"). (ROR, Item #55, p. 404). Sotovento is engaged in the business of second mortgage brokering. (ROR, Item #52, p. 382). The plaintiff and his spouse, Amy E. Todisco, own Sotovento. Id. at 384. The purpose of the second mortgage was to guarantee the availability of funds to pay the plaintiff's legal fees. (ROR, Item #60, p. 503 et. seq.)
The limited partners became aware of the second mortgage by checking the Westport land records. (ROR, Item #60, p. 461). LeMieux made allegations that William Grossman in his capacity as property manager for Morningside was misappropriating funds. (ROR, Item #9, p. 32). LeMieux terminated Grossman's management agreement and notified criminal justice authorities who initiated an investigation. (ROR, Item #60, p. 515, #78, p. 717.) In a letter dated September 29, 1995, LeMieux wrote to Grossman, CT Page 2351 "[e]ffective immediately, I am initiating steps to disengage my affairs from yours — in all respects. . . .In order to assist me in this particular phase of my career, I have engaged the services of the law firm of Braunstein Todisco, LLC, One Eliot Place, Fairfield, Connecticut 06340 as my counsel." (ROR, Item #9, p. 31.) LeMieux informed Morningside investors of these actions. (ROR, Item #78, p. 714.)
The limited partners were concerned about the economic status of Morningside. In the fall of 1995 it was their belief that LeMieux was improperly removing monies from Morningside and denying them access to the partnership's financial records. (ROR, Item #60, p. 459, et seq.) Objection was made to the plaintiff's dual representation, which was being financed with their investment in Morningside. (ROR, Item #60, pp. 460, 479.) The dispute between Morningside and LeMieux developed into litigation. Standish v. Sotavento Corp., 58 Conn. App. 789, 755 A.2d 910
(2000).[8] The committee found that the plaintiff's testimony was not credible.
The court finds that the record contains substantial evidence to support the committee's finding that the plaintiff's representation of LeMieux individually was "directly adverse" to his representation of Morningside. The record contains ample evidence from which the committee could reasonably conclude that the personal interests of LeMieux were directly at odds with Morningside and its limited partner investors. The committee's finding that this dual representation was undertaken without the consent of each client after consultation is also supported by the record. Accordingly, the committee's finding that the plaintiff violated Rules 1.7(a) and 1.13(e) is affirmed.
 (D) The Plaintiff's Claim That The Sotovento Mortgage Did Not Result In Violations of Rules 1.7(b), 1.8(a). and 1.13(e)
The committee found by clear and convincing evidence that "[t]he Respondent's representation of Sotovento at a time when he had an ownership interest in Sotovento and his representation of Morningside at a time when Sotovento granted a $150,000.00 mortgage on property owned by Morningside constituted a violation of Rules 1.7(b), 1.8 and 1.13(e)." (ROR, Item #99, p. 1009). The plaintiff maintains that business transactions with a client are not barred by the Rules of Professional Conduct. He contends that he fully complied with all requirements contained within the applicable Rules. (Plaintiff's Brief, pp. 18 et. seq.).
Rule 1.7(b) provides in relevant part, "[a] lawyer shall not represent CT Page 2352 a client if the representation of that client may be materially limited by the lawyer's responsibility to another client . . . or by the lawyer's own interests, unless . . . The lawyer reasonably believes the representation will not be adversely affected; and. . . .The client consents after consultation . . . the consultation shall include explanation of the implications of the common representation and advantages and risks involved."
Rule 1.8(a) provides in relevant part, "[a] lawyer shall not enter into a business transaction . . . with a client or . . . knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client . . . unless . . . the transaction and terms. . . are fair and reasonable to the client . . . and are fully disclosed and transmitted in writing to the client . . . in a manner which can be reasonably understood by the client . . . [t]he client . . . is advised in writing that the client . . . should consider seeking the advice of independent counsel in the transaction and is given a reasonable opportunity to do so . . . [t]he client . . ., consents in writing thereto."
In applying these rules to the evidence presented the committee found that "[t]he Respondent's representation of Sotovento at a time when he had an ownership interest in Sotovento and his representation of Morningside constituted a violation of Rules 1.7(b), 1.8 and 1.13(e) of the Rules of Professional Conduct." (ROR, Item #99, p. 1009.)
As previously discussed there is substantial evidence in the record to support the committee's finding that the plaintiff simultaneously represented the entity of Morningside and LeMieux individually. The plaintiff was a principal in Sotovento. (ROR, Item #52 at p. 384.) Sotovento took a second mortgage on Morningside to secure the payment of the plaintiff's legal fees. (ROR, Item #60, p. 503 et seq.) This occurred at a time when the limited partners objected to the dual representation, and the second mortgage. (ROR, Item #60, p. 460, 479.) Additionally, the limited partners were of the opinion that LeMieux was misappropriating partnership funds. (ROR, Item #60, p. 459, et seq.)
The plaintiff maintains that he fully complied with Rule 1.8(a). He testified that he prepared the mortgage documents and, in accordance with LeMieux's instructions, forwarded them to LeMieux's assistant, Ermine Baronowski. The record contains a letter dated October 12, 1995 from the plaintiff to Baronowski. (ROR, Item #56, pp. 415-416). The plaintiff noted in the letter that the mortgage documents should be reviewed by other attorneys, "we cannot advise him as to any aspects contained therein . . . that is why he needs to have "independent counsel' go over the papers and give him approval to execute them. . . ." Id. The plaintiff indicated CT Page 2353 that LeMieux informed him that he would retain the law firm of Pullman 
Comley. Id. The plaintiff also introduced into evidence an affidavit from Baronowski dated September 24, 1996, in which Baronowski stated in part that she received the October 12, 1995 letter with the enclosed mortgage documents. (ROR, Item #56, p. 414). In that affidavit, Baronowski noted, "[a]s was indicated in Mr. Braunstein's letter and to the best of my recollection, Mr. LeMieux did have me mail copies of the `package' to both Pullman Comley and to Attorney Rice. I do not, however, specifically recall if any other copies were sent to other attorneys or to the C.P.A. firms that were involved with the tax return preparation for the entities at the time." Id. The plaintiff maintains that these actions demonstrate full compliance with the Rules of Professional Conduct requirements. The committee did not find the plaintiff's testimony credible. (ROR, Item #99, p. 1009.)
"Because the damage of a conflict of interest is inherent in any multiple representation, an attorney must disclose more than the fact that he is undertaking to represent more than one client. Full disclosure requires the attorney to explain to the client in detail the risks and foreseeable pitfalls that may arise in the course of the transaction so that the client can understand the reasons why it may be desirable for him or her to have independent counsel." (Internal quotation marks omitted.) Acheson v. White, 195 Conn. 211, 215 fn. 5, 487 A.2d 197
(1985).
The record does not contain evidence of consent to dual representation as mandated by Rule 1.7(b)(2) and 1.13(e), following consultation which includes "an explanation of the implications of the common representation and the advantages and risks involved." Id. Nor does the record demonstrate written consent to the Sotovento mortgage required by Rule 1.8(a)(3). The plaintiff contended at oral argument that the execution of the mortgage document constituted sufficient written consent. Clearly, the Rule envisions a written consent in conjunction with full disclosure of the transaction and its terms, as well as "advice of independent counsel." Rule 1.8(a)(2). In this regard the fact that LeMieux may have had the authority pursuant to the partnership agreement to secure a second mortgage on Morningside property this certainly does not absolve the plaintiff from his duty to comply with the rules of professional responsibility.
The committee's finding that the plaintiff's ownership interest in Sotovento at the time of the mortgage transaction while representing both LeMieux and Morningside materially limited his responsibility to Morningside is supported by the record. It was not unreasonable for the committee to conclude that the plaintiff could not reasonably believe CT Page 2354 that his representation of Morningside would not be adversely affected.[9]
 IV Conclusion
The Grievance Committee's finding that the plaintiff violated the Rules of Professional Conduct by representing the entity of Morningside as well as LeMieux as a general partner is ordered vacated and the appeal is sustained in accordance with this decision. The sanction imposed by the committee is ordered vacated. On all other claims of error raised on appeal, the committee is affirmed. The matter is remanded to the committee to consider the imposition of a sanction pursuant to Practice Book §2-37 which is based solely upon the committee's findings which have been affirmed.
PETER EMMETT WIESE, JUDGE