******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CONNECTICUT FINE WINE & SPIRITS, LLC, ET AL. *v.* DEPARTMENT OF CONSUMER PROTECTION, LIQUOR CONTROL COMMISSION
## (AC 47941)

Alvord, Suarez and Palmer, Js.

*Syllabus*

The plaintiffs appealed from the trial court's judgment dismissing their administrative appeal from the defendant commission's decision imposing civil penalties for violations of a state statute (§ 30-94 (a)) and its corresponding regulation (§ 30-6-A29 (a)), which prohibit a licensed permittee, in any transaction with another permittee, from receiving any free goods, gratuities, gifts or other inducements in connection with the sale of alcoholic beverages. The commission concluded that the plaintiffs had received an improper inducement in the form of free labor, namely, that employees of two wholesale beer distributors had stocked the shelves of the plaintiffs' retail liquor stores with newly delivered beer. On appeal, the plaintiffs claimed, inter alia, that the court improperly concluded that substantial evidence supported the commission's finding that the beer distributors' employees provided the plaintiffs with free labor by stocking the shelves of the plaintiffs' stores. *Held*:

The trial court properly concluded that the commission's decision was supported by substantial evidence, as the members of the commission reasonably credited the testimony of K, a liquor control agent with twenty-three years of experience, regarding what transpired at the plaintiffs' two retail stores, and the commission was free to credit K's firsthand account over the testimony of the plaintiffs' witnesses, who testified only generally about the stores' policies, procedures and practices but were not present when the beer was delivered and placed on the stores' shelves.

This court declined to review the plaintiffs' claim that, even if the commission reasonably had concluded that the distributors were engaged in prohibited stocking, the receipt of such free labor was not an inducement under § 30-94 (a) and § 30-6-A29 (a) of the regulations without proof of an agreement between the distributors and the stores for the provision of that free labor, as the plaintiffs failed to raise the claim before the commission and, therefore, that claim was not properly preserved.

Argued May 20—officially released December 30, 2025

*Procedural History*

Administrative appeal from the decision of the defendant imposing civil penalties on the plaintiffs, brought to the Superior Court in the judicial district of New

Britain and tried to the court, *Budzik, J.*; judgment dismissing the appeal, from which the plaintiffs appealed to this court. *Affirmed.*

*Richard C. Robinson*, for the appellants (plaintiffs).

*Matthew B. Beizer*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (defendant).

*Opinion*

PALMER, J. General Statutes § 30-94 (a) and § 30-6-A29 (a) of the Regulations of Connecticut State Agencies prohibit a licensed permittee, in any transaction with another permittee, from receiving any free goods, gratuities, gifts "or other inducements" in connection with the sale of alcoholic beverages.[1] The plaintiffs, Connecticut Fine Wine & Spirits, LLC (Connecticut Fine Wine), and its representative owner, David J. Trone, appeal from the judgment of the trial court dismissing the plaintiffs' administrative appeal from the decision of the defendant, the Department of Consumer Protection, Liquor Control Commission (commission), concluding that the plaintiffs violated those provisions by receiving an improper inducement in the form of free labor, namely, the shelf stocking of newly delivered beer at

---

[1] General Statutes § 30-94 (a) provides: "No permittee or group of permittees licensed under the provisions of this chapter, in any transaction with another permittee or group of permittees, shall directly or indirectly offer, furnish or receive any free goods, gratuities, gifts, prizes, coupons, premiums, combination items, quantity prices, cash returns, loans, discounts, guarantees, special prices or other inducements in connection with the sale of alcoholic beverages or liquors. No such permittee shall require any purchaser to accept additional alcoholic liquors in order to make a purchase of any other alcoholic liquor."

Section 30-6-A29 (a) of the Regulations of Connecticut State Agencies provides: "No permittee in transactions with another permittee shall directly or indirectly offer, furnish, solicit or receive any free goods, discounts, gratuities, gifts, prizes, coupons, premiums, combination items, quantity prices, cash returns, loans, guarantees, inducements or special prices, or other inducements with the sale of alcoholic liquors."

the plaintiffs' two retail liquor stores by employees of
the two wholesale beer distributors who supplied the
beer to the stores. On appeal to this court, the plaintiffs
claim that the trial court improperly concluded that (1)
substantial evidence supports the commission's finding
that the beer distributors' employees provided the plain-
tiffs with free labor by stocking the shelves of the plain-
tiffs' stores, and (2) even if the evidence supports a
finding that the distributors' employees engaged in shelf
stocking at the plaintiffs' stores, such free labor is not
a prohibited inducement under § 30-94 (a) and § 30-6-
A29 (a) of the regulations without proof that the stock-
ing was done pursuant to an agreement between the
distributors and the stores that the distributors would
provide such free labor to the stores. We agree with the
trial court that the evidence supports the commission's
finding that the distributors' employees were stocking
beer on the shelves of the plaintiffs' stores. With respect
to the plaintiffs' claim that such stocking, even if proven,
is not, without more, a prohibited inducement, we
decline to review that claim because the plaintiffs failed
to raise it before the commission. We therefore affirm
the judgment of the trial court.

The following facts and procedural history are rele-
vant to our resolution of this appeal. Trone is the permit-
tee of two retail liquor stores named Total Wine & More
(Total Wine) located in Milford and Norwalk. Connecti-
cut Fine Wine is the backer of those stores.[2] Following
an anonymous complaint to the Department of Con-
sumer Protection, Liquor Control Division (liquor con-
trol division),[3] Michael Kula, a liquor control agent with

[2] General Statutes § 30-1 (4) provides: " 'Backer' means, except in cases
where the permittee is the proprietor, the proprietor of any business or
club, incorporated or unincorporated, that is engaged in manufacturing or
selling alcoholic liquor and in which business a permittee is associated,
whether as an agent, employee or part owner."

[3] The anonymous written complaint, which purported to be from an
employee of a beer distributor, alleged that the two Total Wine stores,
among other liquor retailers, had engaged in a " 'pay to play' racket" whereby

the liquor control division, conducted an investigation prompted by the complaint. At the conclusion of the investigation, the plaintiffs were charged with having violated both § 30-94 (a) and § 30-6-A29 (a) of the regulations on two separate occasions, December 7, 2021, at the Milford Total Wine store, and July 13, 2022, at the Norwalk Total Wine store.

As more particularly set forth by the commission, the plaintiffs were charged as follows. First, "[o]n December 7, 2021, [Kula] observed a . . . tractor trailer [from Star Distributors, a wholesale liquor distributor] at the dock of the [Milford Total Wine store], as well as a Star Distributors panel van. [Kula] then entered the premises and observed employees from Star Distributor[s] stocking shelves at the . . . premises with Modelo beer and Miller Lite beer. The area being stocked was the only point of sale for the products and was directly accessible to patrons. Such activity of wholesalers stocking newly delivered beer to liquor retailers is prohibited by law." Second, "[o]n July 13, 2022, [Kula] observed a tractor trailer from Dichello Distributors [a wholesale liquor distributor] backing up to the loading dock of the [Norwalk Total Wine store]. [Kula] then observed employees from Dichello Distributors arrive in a panel van and enter the premise[s]. [Kula] subsequently entered the premise[s] and observed [those] employees moving cases of Bud Light beer twenty-four packs from a rolling gondola to the shelving area. The area was the only point of sale for the Bud Light twenty-four packs in the premise[s] and had direct consumer access. Such activity of wholesalers stocking newly delivered beer for retail off premises permittees is prohibited by law."

the stores would not order beer from the complainant's employer unless the employer shelved the beer upon delivery, a task that the complainant asserted took "2-3 hours."

The commission conducted an evidentiary hearing on the charges. At the hearing, Kula testified that he was present at the Milford Total Wine store on December 7, 2021, and personally observed employees of Star Distributors stocking the shelves of the store with beer that those employees had just delivered. Using his cell phone, Kula took a short video of the Star Distributors employees that depicted a small portion of the activity that Kula was observing. Kula also testified that, while present at the Norwalk Total Wine store on July 13, 2022, he personally observed Dichello Distributors employees stocking shelves with beer that had just been delivered to the store by those employees. Kula again used his cell phone to briefly record the shelving activity in which the Dichello Distributors' employees were engaged.

Kula further testified that, under § 30-6-A32a of the Regulations of Connecticut State Agencies,[4] a liquor distributor may *rotate* its product on a retailer's shelves

[4] Section 30-6-A32a of the Regulations of Connecticut State Agencies provides in relevant part: "No brand owner, manufacturer, out-of-state shipper or wholesaler may furnish any retailer with services, advertising material or equipment except as follows, and, with respect to alcohol, spirts and wine, if allowed by federal law . . . (f) [n]o brand owner, manufacturer, out-of-state shipper, wholesaler, or salesman for any such entity shall display, stock, rotate or affix the price to alcoholic liquor products for their retail off-premises consumption place of business customers, except as permitted by this section. A brand owner, manufacturer, out-of-state shipper, wholesaler, or salesman for any such entity may perform the following for its retail customers allowed hereunder for their own products only . . . (3) The rotating of all perishable products is permitted provided that rotating consists of moving stock from rear to front on the shelves in the sales area only, and does not include the stocking or cleaning of shelves and other similar services on shelves in the sales area or any other area . . . . Any brand owner, manufacturer, out-of-state shipper, wholesaler, or salesman for any such entity who elects to provide any of the aforementioned services shall do so only with the permission of the retailer involved, and shall provide the same service to all their retail customers without discrimination. Any permittee or salesman who knowingly provides or receives services in violation of this section shall be subject to license revocation or suspension."

by moving, or rotating, the retailer's newest product to the back of the shelves and placing the older product in the front of the shelves, thereby ensuring that new inventory is placed behind older inventory already on the retailer's shelves, so that the older product is sold first. Kula also explained, however, that the regulation expressly *prohibits* a distributor from stocking, for immediate sale to customers, newly delivered product that had not previously been placed on the shelves by the retailer's employees.[5] Finally, Kula testified that, just as liquor distributors are prohibited by § 30-6-A32a of the regulations from stocking the shelves of retail liquor stores with newly delivered product for immediate sale, retailers themselves are barred from receiving such free labor because the stocking of product by distributors, in contrast to the permissible rotating of product by distributors, constitutes an unlawful inducement within the meaning of § 30-94 (a) and § 30-6-A29 (a) of the regulations.[6]

At the conclusion of Kula's testimony, the plaintiffs adduced testimony from several Total Wine employees, including a district manager, the managers of the Norwalk and Milford stores, and two regional ordering captains. Although those witnesses testified that the Total Wine stores do not permit prohibited shelf stocking and that Kula's perception about what occurred at the

[5] In explaining this aspect of the statutory and regulatory scheme, Kula testified that, on August 2, 2021, John Suchy, the former director of the liquor control division, issued a memorandum titled "Guidance Statement for Wholesalers and Liquor Retailers." In the memorandum, Suchy made clear, inter alia, that wholesale liquor distributors may engage in the "rotation of perishable products on the sales shelves or coolers in order to protect the quality of the products, specifically the rotation of stock from the rear of the shelf to the front of the shelf (no stocking allowed; must only rotate what is on the shelf)," but may not engage in the "stocking of any warm or cold beer on the shelf for immediate sale to a consumer . . . ."

[6] Thus, under the statutory and regulatory scheme, the stocking of product by a distributor for immediate sale is considered to be prohibited free labor, whereas the rotating of product by a distributor is not.

Milford and Norwalk stores was therefore faulty, none of them was present at either of the two stores when, according to Kula, he personally observed the distributors' employees stocking the shelves of the plaintiffs' stores with beer.

Following the hearing, the commission found that employees of Dichello Distributors and Star Distributors had not rotated the newly delivered beer but instead had stocked the shelves of the Norwalk and Milford Total Wine stores, respectively, by bringing new beer onto the sales floor from the truck or storeroom and that such stocking of store shelves constituted free labor. The commission further concluded that the plaintiffs violated § 30-94 (a) and § 30-6-A29 (a) of the regulations because free labor is a prohibited inducement under those provisions. The commission imposed a $500 fine on the plaintiffs for each of the two violations of § 30-94 (a) and for each of the two violations of § 30-6-A29 (a) of the regulations, for a total fine of $2000. The plaintiffs thereafter appealed from the decision of the commission to the Superior Court pursuant to General Statutes § 4-183.

On appeal to the Superior Court, the plaintiffs claimed, first, that the evidence adduced by the liquor control division was insufficient to support the commission's determination that the distributors' employees had engaged in the impermissible stocking of product and not in the lawful rotating of product. The plaintiffs also contended that, even if the distributors' employees had engaged in stocking, such free labor was not a prohibited inducement under § 30-94 (a) and § 30-6-A29 (a) of the regulations in the absence of evidence establishing an agreement between the distributors and the stores with respect to that free labor. The court, *Budzik, J.*, issued a decision rejecting the plaintiffs' argument that the activity of the distributors' employees that Kula witnessed at the Milford and Norwalk Total

Wine stores was not unlawful stocking but, rather, permissible rotating. The court also declined to review the plaintiffs' second claim, concluding that the plaintiffs had not raised it before the commission and, therefore, the claim was not properly preserved. The court further concluded that, even if the claim had been preserved, it lacked merit because the provision of free labor constitutes an unlawful inducement without proof of an agreement between the liquor distributor and liquor retailer. Accordingly, the court dismissed the plaintiffs' administrative appeal and the plaintiffs appealed to this court. Additional facts will be set forth as necessary.

On appeal, the plaintiffs contend that the trial court improperly determined that there was substantial evidence in the record from which the commission could conclude that the plaintiffs received free labor at their Milford and Norwalk Total Wine stores in the form of shelf stocking of newly delivered beer by the distributors' employees. They assert, rather, that the evidence conclusively established, and the commission therefore was required to find, that the distributors were engaged in the permissible rotating of beer, which does not constitute free labor, and not in the unlawful stocking of beer. The plaintiffs also assert that the trial court improperly determined, first, that they are not entitled to review of their claim that free labor is a prohibited inducement because the claim was not properly preserved and, second, that even if they were entitled to such review, they cannot prevail on the claim. We reject the plaintiffs' evidentiary insufficiency claim and decline to consider their claim that free labor is not an unlawful inducement because the plaintiffs failed to raise the claim before the commission.

I

We first address the plaintiffs' contention that the trial court erred in concluding that the commission's

decision is supported by substantial evidence. Before addressing the merits of the plaintiffs' claim, we briefly set forth the well established standard of review applicable to agency decisions under the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. "Our review of an agency's factual determination is constrained by . . . § 4-183 (j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. . . . [I]t is [not] the function of the trial court [or] of this court to retry the case . . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review." (Internal quotation marks omitted.) *Commissioner of Mental Health & Addiction Services* v. *Freedom of Information Commission*, 347 Conn. 675, 687–88, 299 A.3d 197 (2023). Thus, "the scope of [our] review is very restricted . . . [and] [t]he burden is on the [plaintiff] to demonstrate that the [agency's] factual conclusions were not supported by . . . substantial evidence [based] on the whole record." (Internal quotation marks omitted.) *Cohen* v. *Dept. of Energy & Environmental Protection*, 215 Conn. App. 767, 791–92, 285 A.3d 760, cert. denied, 345 Conn. 968, 285 A.3d 1126 (2022), and cert. denied, 345 Conn. 969, 285 A.3d 737 (2022). In other words, "[t]he substantial evidence standard requires courts to defer to agency findings in the absence of a strong reason to intervene . . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Internal quotation marks omitted.) *Commissioner of Mental*

*Health & Addiction Services* v. *Freedom of Information Commission*, supra, 708.

We now turn to the decision of the trial court, which concluded that the commission's decision was supported by substantial evidence. The court summarized that evidence as follows. "Kula is a [liquor control agent] investigating potential violations of Connecticut's liquor laws. [Kula] has worked for the [liquor control division] for twenty-three years. [Kula] is familiar with the distinction between prohibited stocking of alcohol products and the permissible rotating of old, or stale, alcohol products. . . . On December 7, 2021, [Kula] visited [the Milford Total Wine] store . . . [and] saw [Star Distributors'] delivery truck at [the store's] loading dock and a 'marketing' van parked in the store's parking lot. Upon entering the store, [Kula] personally observed two employees of Star Distributors stocking new beer (Miller Lite and Modelo) from a storage 'gondola' directly onto [the store's] shelves for direct sale to consumers. [Kula] video recorded what he observed on his iPhone and a copy of the video recording was entered into evidence at the administrative hearing. When the Star Distributor[s] employees left the [Milford Total Wine] store, [Kula] spoke to the employees in the parking lot. The Star Distributor[s] employees readily admitted to [Kula] that they worked for Star Distributors and that they commonly engaged in the stocking activity that [Kula] had observed. After [Kula] told Jeff Herbele, the manager of [the Milford Total Wine] store, that [Kula] had observed illegal stocking of new alcohol products by wholesaler employees, [Herbele] did not attempt to argue that what [Kula] had observed was permissible rotating, not impermissible stocking.

"On July 13, 2022, [Kula] visited [Total] Wine's Norwalk . . . store. At the Norwalk store, [Kula] was also joined by [a second liquor control agent]. [Kula]

observed a delivery truck owned by Dichello Distribu-
tors pulled up to the . . . store's loading dock. Dichello
[Distributors] is a well known beer distributor in the
area. [Kula] personally observed and video recorded
the stocking of beer on the retail shelves at [the] . . .
store by Dichello [Distributors] employees under nearly
identical circumstances as [Kula] testified to at the Mil-
ford [Total Wine] location." In addition, Kula testified
that he approached the Dichello Distributors employees
and told them that stocking was prohibited. Those
employees, however, did not state that they were rotat-
ing rather than stocking the beer.

After reviewing the record and the commission's deci-
sion, the trial court rejected the plaintiffs' claims and
dismissed their appeal. In doing so, the court explained
its reasoning as follows. "Here, the record plainly dem-
onstrates that [Kula] personally observed and video
recorded activities that he described as prohibited
stocking of alcohol by wholesale distributor employees
on the shelves of [the plaintiffs' stores, which are] alco-
hol retailer[s]. Although [the plaintiffs argue] that [Kula]
actually observed permissible rotating of [stock], the
commission is permitted to make its own factual deter-
minations based on the evidence presented at the
administrative hearing and to make reasonable infer-
ences from the evidence presented at the hearing. The
court holds that the commission is well within its discre-
tion as fact finder to conclude that [Kula's] clear and
explicit testimony . . . that the activities he observed
at [the] Milford and Norwalk [Total Wine] locations on
the days in question was stocking, not rotating. [Kula]
is an experienced liquor [control] agent, and it is a
reasonable inference for the commission to conclude
that he understood and accurately testified to the activi-
ties he observed. The commission is not required to
credit contrary witness testimony offered by [the plain-
tiffs]."

We agree with the trial court that the commission's decision was adequately supported by the evidence presented at the hearing. Kula is a liquor control agent with more than two decades of experience who personally observed the distributors' employees engaging in conduct at the Milford and Norwalk Total Wine stores that he recognized as prohibited stocking as distinguished from lawful rotating. In addition, Kula's testimony was buttressed by the short videos he took of the distributors' employees at each of the plaintiffs' stores. Moreover, when Kula approached and spoke with those employees before departing the stores, the employees did not state that they were rotating rather than stocking the beer. Considering Kula's experience and expertise, the commission was fully entitled to credit his firsthand testimony, which the trial court summarized fairly and accurately in its decision.

The plaintiffs nevertheless maintain that Kula's testimony was insufficient to disprove that the distributors' employees were engaged in the permissible rotating of beer and not in unlawful stocking. In support of this contention, the plaintiffs assert that Kula's investigation of what was occurring at the plaintiffs' two stores was neither thorough nor reliable and that his testimony therefore consisted of only "brief and superficial observations" of that activity; the "mere twenty-one seconds" of the video recording depicting the activity of the distributors' employees at the stores did not constitute persuasive proof of stocking; there was no testimony from any of the distributors' employees that they were stocking rather than rotating beer at the two stores; and, although Kula testified on direct examination that it was "obvious" to him that the distributors' employees were, in fact, stocking beer, he acknowledged on cross-examination that there was "a possibility" that what he observed at the Milford Total Wine store was the lawful rotating of beer.

This argument reflects the crux of the claim asserted by the plaintiffs, namely, that the liquor control division "was required—but failed—to present any evidence that would rule out the possibility that perfectly lawful conduct [that is, the rotating of beer on the plaintiffs' shelves by the distributors' employees] was occurring in the [plaintiffs'] stores on the two days that [Kula] conducted his investigation." The plaintiffs' contention misses the mark. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Internal quotation marks omitted.) *Stratford Police Dept.* v. *Board of Firearms Permit Examiners*, 343 Conn. 62, 81, 272 A.3d 639 (2022). Consequently, the liquor control division was not required to adduce evidence susceptible to only one possible conclusion. Its burden, rather, was to convince the commission of the validity of the allegations against the plaintiffs by substantial evidence, no matter whether the commission rationally might have come to a different conclusion based on that evidence.

Thus, the sufficiency of the evidence upon which the commission relied does not depend on whether Kula's investigation could have been more thorough, or whether the videos taken by Kula could have been longer or more detailed, or whether testimony by the distributors' employees would have been helpful to the commission. The sufficiency of the evidence underlying the commission's decision is predicated on the proof that the liquor control division did present through Kula's testimony, not on evidence that could have been presented. See, e.g., *State* v. *Daniels*, 228 Conn. App. 321, 326–27, 324 A.3d 820 (claim of evidentiary insufficiency "must be tested by reviewing no less than, and no more than, the evidence introduced" (internal quotation marks omitted)), cert. denied, 350 Conn. 926, 326 A.3d 248 (2024). Similarly, it is not our role as a reviewing

court to evaluate the relative strength or weakness of
the evidence before the commission; rather, it is our
function merely to determine whether that evidence
adequately supported the commission's decision.

As we have explained, the members of the commission, who observed Kula's testimony on direct and
cross-examination, reasonably credited his explanation, based on his extensive experience as a liquor control agent, of what transpired at the plaintiffs' two retail
stores. Although the plaintiffs assert that Kula's investigation was "fatally flawed" and his testimony "woefully
deficient" because, in their view, the activity of the
distributors' employees that Kula described was not
necessarily inconsistent with the lawful rotating of
product, the determination of whether to accept or
reject Kula's testimony, in whole or in part, is a matter
for the commission and the commission alone. "In
reviewing factual findings, [w]e do not examine the
record to determine whether the [fact finder] could
have reached a conclusion other than the one reached."
(Internal quotation marks omitted.) *Reserve Realty,
LLC* v. *Windemere Reserve, LLC*, 346 Conn. 391, 414,
291 A.3d 64 (2023). Rather, "it is the exclusive province
of the trier of fact to make determinations of credibility
. . . . Questions of whether to believe or to disbelieve
a competent witness are beyond our review. As a
reviewing court, we may not . . . pass on the credibility of witnesses. . . . We must defer to the [commission's] assessment of the credibility of the witnesses
that [was] made on the basis of its firsthand observation
of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *Stratford Police Dept.* v. *Board of
Firearms Permit Examiners*, supra, 343 Conn. 86–87.
Determinations regarding Kula's credibility were
squarely within the province of the commission as the
finder of fact in the present case. See id. Consequently,
the reliability of Kula's testimony and the weight to give

it were determinations solely for the commission to make; see *Do* v. *Commissioner of Motor Vehicles*, 330 Conn. 651, 667–68, 200 A.3d 681 (2019); and it is not the purview of either this court or the trial court to reexamine, reweigh or otherwise second-guess that testimony. See *Stratford Police Dept.* v. *Board of Firearms Permit Examiners*, supra, 87.

The plaintiffs also maintain that certain "overwhelming and unrebutted" testimony at the hearing by its own supervisory employees established that the activity in which the distributors' employees were engaged constituted permissible rotating rather than unlawful stocking. It is undisputed, however, that because none of these witnesses were present when the beer was delivered and placed on the stores' shelves, they did not personally observe what occurred. Instead, they testified on the basis of their general knowledge and understanding of the manner in which beer ordinarily is delivered, stocked and rotated at their stores. Of course, the commission was not required to accept Kula's testimony notwithstanding that he was the lone witness to testify from personal knowledge about what transpired at the plaintiffs' stores. The commission, however, certainly was free to credit Kula's firsthand account over the testimony of the plaintiffs' witnesses, who testified only generally about the stores' policies, procedures and practices. For that reason alone, we will not disturb the commission's findings.

Finally, the plaintiffs argue that this case is akin to *Dolgner* v. *Alander*, 237 Conn. 272, 676 A.2d 865 (1996), which involved a claim that the trial court improperly had determined that substantial evidence supported the finding by an administrative hearing officer that the operator of a family day care home had violated certain regulations governing the operation of such day care homes. Id., 273. We disagree with the plaintiffs that

*Dolgner* bears any material similarity to the present case.

As this court previously has stated in explaining the holding in *Dolgner,* "[o]ur Supreme Court [in *Dolgner*] . . . found the substantial evidence standard unsatisfied where a [department of human resources] hearing officer revoked a family day care license on the basis of evidence that consisted only of 'conclusory and general statements,' and where '[t]he evidence presented at the hearings failed to disclose the factual particulars regarding inappropriate conduct that had occurred at the plaintiff's family day care home, the dates on which inappropriate conduct occurred, the frequency of inappropriate conduct or any other details concerning the plaintiff's alleged violations . . . .' [*Dolgner* v. *Alander,* supra, 237 Conn. 282]. Further, because various reports containing more detailed information were not introduced into evidence at the hearing, the hearing officer in *Dolgner* 'was not provided with an opportunity to assess and to weigh independently and adequately the accuracy and the reliability of the evidence presented.' Id." *Elf* v. *Dept. of Public Health,* 66 Conn. App. 410, 420, 784 A.2d 979 (2001); see also *Frank* v. *Dept. of Children & Families,* 312 Conn. 393, 413–14, 94 A.3d 588 (2014) (discussing and distinguishing *Dolgner*). In addition, the evidence of inappropriate conduct presented to the hearing officer in *Dolgner* consisted largely, if not entirely, of hearsay testimony by two police officers based on their interviews with several children who were present at the family day care home when the violations allegedly took place. See *Dolgner* v. *Alander,* supra, 274–76, 279.

The present case is readily distinguishable from *Dolgner.* Here, the commission heard testimony from Kula, a liquor control agent with twenty-three years of experience, that he personally observed the distributors' employees shelving the newly delivered beer at the

plaintiffs' two stores. That testimony included all of the facts upon which Kula relied in concluding that what he witnessed was unlawful stocking rather than rotating. Moreover, Kula was extensively cross-examined about his firsthand observations by the plaintiffs' counsel and questioned by commission members, as well. Consequently, the commission was able to evaluate fully and weigh Kula's testimony and to make an informed judgment about the facts underlying the charges brought against the plaintiffs. This testimony stands in marked contrast to the hearsay testimony in *Dolgner*, which, lacking specificity and consisting only of conclusory generalizations, afforded the hearing officer no meaningful opportunity to gauge its accuracy or reliability. The plaintiffs' reliance on *Dolgner* is therefore misplaced.

For the foregoing reasons, we agree with the trial court that the commission's decision was based on substantial evidence. Accordingly, the plaintiffs' claim that the evidence adduced by the liquor control division was insufficient to support the commission's decision must fail.

## II

The plaintiffs also claim that, even if the commission reasonably concluded that the distributors were engaged in prohibited stocking, the receipt of such free labor is not an inducement under § 30-94 (a) and § 30-6-A29 (a) of the regulations without proof of an agreement between the distributors and the stores for the provision of that free labor, and no such proof was presented at the hearing. The plaintiffs further maintain that the trial court improperly concluded that they were not entitled to review of that claim because it was not raised before the commission. Finally, the plaintiffs contend that the trial court erred in holding that they could not prevail on the merits of their claim, even if reviewable, because,

according to the plaintiffs, such free labor is not a prohibited inducement in the absence of an agreement between the distributor and the stores for the provision of such free labor, and there is no evidence of any such agreement in the present case.[7] We decline to review the plaintiffs' claim because it is not properly preserved.

As the trial court determined, the plaintiffs failed to raise before the commission the claim that free labor is not a prohibited inducement and, therefore, the claim is not preserved. Our Supreme Court has made clear that the failure to preserve such a claim disentitles an appellant from review of the claim. "Practice Book § 60-5 provides in relevant part that [t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. Indeed, it is the appellant's responsibility to present such a claim clearly to the trial court so that the trial court may consider it and, if it is meritorious, take appropriate action. That is the basis for the requirement that ordinarily [the appellant] must raise in the trial court the issues that he intends to raise on appeal. . . . This rule applies to appeals from administrative proceedings as well. . . . A party to an administrative proceeding cannot be allowed to participate fully at hearings and then, on appeal, raise claims that were not asserted before

---

[7] As we previously have indicated, after concluding that the plaintiffs' claim was not preserved, the trial court stated that the plaintiffs could not prevail on the claim "even if the court were to consider" it. In addressing the merits of the plaintiffs' claim, the court stated: "[T]he court concludes that the plain and ordinary meaning of inducement as set forth in § 30-94 (a) and § 30-6-A29 (a) [of the regulations] would include the provision of free labor by a liquor wholesaler to a liquor retailer. Connecticut Fine Wine is a business. Basic economic principles teach that wage and labor costs are an important consideration to any business. Not having to pay its own employees to stock products for sale on its shelves is plainly an inducement to Connecticut Fine Wine because [it] saves Connecticut Fine Wine from having to pay those costs of doing business itself." Because we decline to consider the plaintiffs' unpreserved claim, we express no view on the merits of the trial court's decision with respect to that claim.

the board [or commission]. . . . [T]o allow a court to set aside an agency's determination [on] a ground not theretofore presented . . . deprives the [board or commission] of an opportunity to consider the matter, make its ruling, and state the reasons for its action." (Citations omitted; internal quotation marks omitted.) *Direct Energy Services, LLC* v. *Public Utilities Regulatory Authority*, 347 Conn. 101, 148, 296 A.3d 795 (2023); see also *Board of Education* v. *Commission on Human Rights & Opportunities*, 344 Conn. 603, 623, 280 A.3d 424 (2022) ("[w]hen a party has failed to preserve a claim before an administrative agency . . . we apply the ordinary rules governing appellate review of unpreserved claims").

"Accordingly, appellate review generally is limited to issues that were distinctly raised at trial. . . . Only in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . .

"It is equally well settled, however, that a reviewing court, although not *bound* to consider a claim that was not raised to the trial court, may do so at its discretion. . . . We are unaware of any statutory or procedural rule limiting that discretion. . . . [Therefore] [i]n some instances we may overlook the procedural error and consider a question not properly raised below, not by reason of the appellant's right to have [the claim] determined but because, in our opinion, in the interest of the public welfare or of justice between the parties, the question ought to be considered." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Curley* v. *Phoenix Ins. Co.*, 220 Conn. App. 732, 743–44, 299 A.3d 1133, cert. denied, 348 Conn. 914, 303 A.3d 260 (2023).

Our Supreme Court has explained what it means to raise a claim distinctly. "To merit consideration [in an

administrative appeal], an issue must be distinctly raised [before the board or commission], not just briefly suggested . . . . The requirement that [a] claim be raised distinctly . . . means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." (Emphasis in original; internal quotation marks omitted.) *Idlibi* v. *Hartford Courant Co.*, 350 Conn. 557, 567, 325 A.3d 1048 (2024). Because the plaintiffs did not distinctly raise their claim with the commission, and because we are aware of no exceptional circumstances that militate in favor of our consideration of the claim, we decline to do so.

The plaintiffs offer three reasons why we should nonetheless review the claim. The plaintiffs first assert that they could not have known prior to the commission's decision that the commission would "inject clear errors of law" into its decision, errors which, the plaintiffs allege, include the commission's determination that "[f]ree labor is a prohibited inducement." (Internal quotation marks omitted.) The plaintiffs further maintain that they "had no opportunity to challenge that error until the [commission] published [its] decision."

We are unpersuaded by the plaintiffs' arguments. The liquor control division took the position before the commission that free labor is an unlawful inducement, and the plaintiffs knew that the commission would be deciding that central issue. Consequently, the plaintiffs had a compelling reason to advocate for their contrary view of the law. In such circumstances, the plaintiffs, having failed to apprise the commission of their position on the issue, cannot reasonably complain that they were unfairly blindsided when the commission, agreeing with the position of the liquor control division, rendered an adverse decision on the issue. Furthermore, following the issuance of the commission's decision, the plaintiffs

could have sought reconsideration of the issue by the commission but did not do so.

Alternatively, the plaintiffs claim that their contention that free labor is not an inducement was "properly preserved for . . . appeal" because they "raised [the] issue by recognizing that inducement was an element of the [liquor control] division's case, that the anonymous complainant's 'pay to play' allegations[8] were allegations of inducement, and by presenting evidence to show [both] that there was never any such inducement [and] that the very notion of inducement was absurd given the circumstances." (Footnote added.) The plaintiffs' argument ignores the requirement that, for preservation purposes, a claim must be raised with sufficient clarity to alert the court or agency of the precise issue involved, and the mere suggestion or intimation of the issue will not suffice. It is readily apparent that the references to the record upon which the plaintiffs rely to support their claim of proper preservation fall far short of the clarity and precision necessary to satisfy the requirement that a claim must be distinctly raised below to warrant review on appeal.

Finally, the plaintiffs maintain that their contention that free labor is not an inducement is an argument, not a claim, and only claims are subject to our preservation rules. The plaintiffs also assert that their contention concerning free labor implicates an issue of statutory interpretation that is "plainly intertwined with the entirety of the [liquor control] division's case." We disagree.

"Our Supreme Court has explained that there is a difference between a claim and an argument in support of a claim for purposes of our rules of preservation: '[O]rdinarily, [a reviewing court] will decline to address only a *claim* that is raised for the first time on appeal.

---

[8] See footnote 3 of this opinion.

. . . [A] claim is an entirely new legal issue, whereas, [g]enerally speaking, an argument is a point or line of reasoning made in support of or in opposition to a particular claim. . . . Because [o]ur rules of preservation apply to claims . . . [and not] to legal arguments . . . [w]e may . . . review legal arguments that differ from those raised below if they are subsumed within or intertwined with arguments related to the legal claim before the court.' . . . *Markley* v. *State Elections Enforcement Commission*, 339 Conn. 96, 104–105 n.9, 259 A.3d 1064 (2021)." (Emphasis in original.) *Curley* v. *Phoenix Ins. Co.*, supra, 220 Conn. App. 744–45.

Contrary to the plaintiffs' assertion, they have raised two primary *claims* on appeal: first, that there was not substantial evidence before the commission to support its determination that the distributors' employees were engaged in unlawful stocking, and second, that free labor is not a prohibited inducement within the meaning of § 30-94 (a) and § 30-6-A29 (a) of the regulations without proof of an agreement for the provision of that free labor between the distributor and the retailer. The first claim involves a purely factual issue, that is, whether the evidence presented by the liquor control division at the hearing before the commission was sufficient to support the commission's decision, whereas the second claim involves a pure question of law, that is, whether, as a matter of statutory interpretation, free labor falls within the statutory and regulatory prohibition against a permittee's receipt of inducements. Neither is subsumed within or intertwined with the other in any way. Of course, both claims bear on the ultimate issue of whether the commission's decision against the plaintiffs was proper, but otherwise the claims are wholly separate and distinct, with each providing an entirely independent ground for challenging the commission's decision. Consequently, for preservation purposes, both are

claims rather than arguments, and, as such, they are subject to our rules governing preservation.

The judgment is affirmed.

In this opinion the other judges concurred.

———————————————